## G. A. Shontz et al., Appellees, v. John U. Metzger et al., Appellants.

1.   WATERS AND WATER COURSES, § 29*—*when evidence sufficient to sustain a decree abating a levee.*   On bill filed for a mandatory injunction for the removal of a levee constructed to obstruct the flow of flood waters, a decree requiring the defendants to abate the levee *held* sustained by the evidence, there being evidence to show that complainant's lands were more or less damaged by reason of the obstruction.

2.   WATERS AND WATER COURSES, § 12*—*right to erect levee against flow of flood waters.*   The rule that the owner of a servient estate has no right to erect a levee to obstruct the flow of surface waters applies to the flow of flood waters.

3.   WATERS AND WATER COURSES, § 22*—*what not a defense to bill to abate levee.*   The fact that the abatement of a levee would cause more harm to the persons constructing it than to the parties damaged by the obstruction, *held* no defense to a bill for a mandatory injunction to require removal of the levee.

4.   APPEAL AND ERROR, § 1365*—*when refusal of court to permit amendment and hear evidence not an abuse of discretion.*   Refusal of court to permit an amendment to an answer and to hear additional evidence after the case had been closed, *held* not an abuse of discretion.

5.   INJUNCTION, § 216*—*laches.*   On bill for a mandatory injunction to abate a levee, complainants *held* not estopped by laches.

Appeal from the Circuit Court of Fayette county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed November 11, 1911. Rehearing granted April 3, 1912, and opinion filed November 11, 1911, readopted by a decision rendered in the March term, 1914.

BROWN & BURNSIDE and ALBERT & MATHENY, for appellants.

ARTHUR ROE, NOLEMAN & SMITH and W. F. BUNDY, for appellees.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

Mr. Presiding Justice McBride delivered the opinion of the court.

This cause was heard by the chancellor upon oral testimony produced in open court at the August term, 1910, of the Circuit Court of Fayette county. A decree was rendered in favor of the complainants requiring the defendants to abate a levee, and from this decree the appellants prosecute this appeal.

The bill alleges that the complainants, G. A. Shontz, F. W. Sasse, Clyde R. Dees, Stanley Dees, Omer Perry, James U. Cooper, M. F. Cox, Albert Perry, C. W. Freeman, are the individual owners of separate lands to the amount of about one thousand acres, except that G. A. Shontz and F. W. Sasse own a certain tract of land jointly, and Clyde R. Dees and Stanley Dees own certain other tracts jointly (also describes all of said lands). That these lands are all located in the Kaskaskia River bottom and commonly known as overflow lands. That the defendants John U. Metzger and J. D. Mitchell in about the year 1903 constructed a levee about four feet high and about four feet wide along the north line of the northeast quarter of the northeast quarter of section nineteen, owned by defendant Mitchell, and also along the north line of the northeast quarter of the northwest quarter of section twenty, owned by J. U. Metzger. That said defendants have maintained said levee ever since. That said levee is constructed in such manner that it obstructs the natural flow of the water, and that surface water and water coming down the Kaskaskia River in time of overflow and floods would naturally flow southward off the lands of complainants across the premises of defendants and through the Wild Cat Drainage District ditches and drains thereof if it were not for said levee. That the town of Kaskaskia, by its Highway Commissioners, after the construction of said levee raised and graded the public highway running along the north line of said sections nineteen and twenty on the north of said levee to a height of about three feet and to

the width of the highway, except that in some places the embankment was not so high. That by reason of the retention of such of said waters the lands of the complainants are washed, soured and injured, and that the complainants have often demanded that the defendants remove said levee but they have failed and refused so to do; that the injury occasioned thereby is recurrent, and is an injury to complainants, and each of them, who own the several tracts of land above set forth. That complainants' said lands have been cleared up and made ready for cultivation; that the soil is very rich and would be highly productive; that the complainants desire to cultivate other lands now cleared up and to clear other portions and reduce them to cultivation, and expect to make large gains and profits out of the cultivation of said lands but that said lands are injured and made less productive, and the crops thereon are destroyed by reason of water being held back by said embankment. That their respective remedies at law are inadequate and any attempt to procure relief at law would result in a multiplicity of suits.

The prayer of the said bill is for a mandatory injunction against the defendants requiring them to take down and remove said embankment.

An amendment was afterwards made to complainants' bill, alleging that on about the 15th day of July, 1909, the said levee and embankment were broken, washed and severed, and the waters temporarily permitted to escape. That thereafter and on towit, July 25th, the defendants wrongfully reconstructed and repaired said levee and embankment to its former state and condition. That the lands of complainants are being reclaimed from wild lands and being reduced to cultivation. That to the southwest of complainants' lands in the direction of the natural flow of water, there is a natural water course to which the waters would drain.

The answer of the defendant Commissioners of Highways avers that said highway has been there for more than twenty years; denies that it crosses any natural water course, and avers that said road for a distance of twenty rods has no grade thereon, leaving an ample opening for the overflow waters, and that the road grade does not in any manner cause the lands of complainants to overflow or be otherwise damaged.

The separate answer of John U. Metzger and J. D. Mitchell admits that complainants are the owners of the land as alleged and that each of them have acquired lands by purchase, since the construction of the levee; admit that in the summer of 1902 they constructed the levee along the north line of section nineteen and twenty, and that it has not been changed or raised but has been maintained at its original height; and deny that the levee was washed away in the summer of 1909, or been repaired; and deny that the levee obstructs the natural flow of the water.

The defendants further aver that the said levee passes across a flat tract of land about seventy rods in length, and is of the average height of about two and one-half feet but there is no natural water course or stream of water running through or across said flat body of land, and that the land both north and south of said levee is practically level; and aver that at no time do any of the waters pass off from the complainants' lands to the point where the levee is constructed, except in the times in which the bottoms of the Kaskaskia River are overflowed by reason of flood waters, and that all of the lands belonging to complainants are overflowed before any water passes on to the lands of these defendants, or would pass there if said levee were not constructed; and the purpose and effect of said levee is to simply withdraw from overflow a portion of the lands belonging to defendants which is flat, and is as high or higher than the lands of complainants; and deny that defendants' lands have been

damaged or injured by the construction or maintenance of said levee.

The answer further avers that all of the lands of complainants, except about seven acres, lie on the opposite side of the river from the said levee; that two of the complainants, Clyde R. Dees and Stanley Dees, have in like manner protected a portion of their lands by constructing a levee along the north side of the slough.

The answer also denies that the lands were injured, the soil rendered unfit for cultivation or that the injury is recurrent, and denies that the complainants' remedies at law are inadequate.

The amendment to the answer avers that complainants and their grantors have since the year 1902, known of the existence of said levee and its effects and acquiesced in its construction and maintenance and have been guilty of laches in bringing this suit; and that because of the apparent acquiescence the defendants have expended a large amount of money, towit, four thousand dollars, in ditches, tiling and the clearing of their lands, and that if said levee be removed their lands will be rendered worthless by the overflow. That in 1908, a flood of water washed away a portion of said levee and that complainant Shontz requested these defendants to rebuild and repair such washouts in the said levee, and that they did repair and rebuild the same; and that Shontz is estopped from insisting that said defendants destroy said levee; that defendant Metzger owns six hundred acres of said land south of said levee which would be rendered practically worthless if said levee be removed.

The court upon the final hearing found the issues for the defendants Town of Kaskaskia and the Commissioners of Highways of said Town, and dismissed the bill as to such defendants, but finds the issues for the complainants as to the defendants Metzger and Mitchell and requires them to abate and remove said levee so constructed by them.

It appears from the record in this case that about one mile and a half up the stream from this levee the Kaskaskia River divides into two branches, forming an island, and uniting again at a distance of about one mile below the levee. The northerly branch is known as the "River" and the southerly as the "Island Slough." At a distance of about three or four hundred feet north of the levee the island slough flows to the west. The bluffs are on the east of the levee and a high point or ridge is at the west end of the levee, and the lands between these two points are flat. That before the erection of said levee, in times of high water, a part of the overflow would pass off between the banks on the east of the levee and the high point on the west down into a stream called Casser Creek, and from thence it spread over the bottom, and at the distance of about eight miles again reached the river, while the waters that were carried through the island slough to the river had to flow a distance of about twenty-five miles to reach the same point. The levee in question was of the height of two and one-half or three feet and was constructed by the defendants Metzger and Mitchell in about the year 1903, and was from time to time washed out and renewed by them. By the construction of this levee they were able to prevent the overflow waters from passing between the high point at the west end of their levee and the bluffs, and protect their lands from the overflow. The effect of this was to hold the overflow waters on complainants' lands until it could pass off through the slough to the west. Many witnesses testified that before the levee was constructed that the waters were so strong that it formed a current at the place where the levee was built, and we are satisfied from the reading of the testimony of this record that in times of overflow the lands of the defendants, being low and between the bluffs, and the island slough on the west formed an opening through which the waters naturally flowed on such occasions, and while it may be

that the lands of some of the complainants were not as much damaged by the obstruction as the lands of others were, yet there is evidence to the effect that all of the complanaints' lands are more or less damaged by reason of this obstruction. At all events, the testimony of the witnesses was heard in open court before the chancellor and he has so determined, and we cannot say that the weight of the evidence is contrary to the finding of the chancellor, or that the decree ought to be disturbed on that account.

It was said by the Supreme Court in the case of *Pinkstaff v. Steffy,* 216 Ill. p. 409: "As this cause was heard by the chancellor in open court we will not feel authorized to disturb the findings and decree unless from a review of the evidence we are satisfied that the decree is so manifestly against and contrary to the weight of the evidence that it ought not to be allowed to stand." It having been determined by the court that the defendants erected the levee in question and that it obstructed the flow of the flood waters, then under the decisions of our court this created such a nuisance as authorized the courts to intervene and abate it.

It appears from the evidence that the heritage of the defendants is a servient one and that of the complainants a dominant heritage, and this being true, the defendants had no right to erect a levee to obstruct the flow of the water from the dominant to the servient heritage, and it can make no difference that it is flood waters that are obstructed. It is said by our Supreme Court in the case of *Chicago P. & St. L. Ry. Co. v. Reuter,* 223 Ill. p. 391: "The rights of the servient and dominant proprietors being the same whether the waters are surface or channel waters, there is no reason for attempting any distinction in the discussion of flood waters; and if there were any distinction, except on the question of variance, it could not avail appellant, because if the flood waters are not held to be surface waters they will partake somewhat of the char-

acter of the waters of running streams, and the more they partake of that character the more strictly will the rule be applied, under all authorities, that each must use his own so as not to injure his neighbor.''

In the case of *Pinkstaff v. Steffy*, 216 Ill. p. 412, the court says: ''It might with equal force be inquired here what difference it can make, in principle, whether the water that submerges the land of Steffy comes from the hills above the land or comes from the overflow of a stream along the same. We are unable to see either the distinction or the ground for one. Both are natural consequences. Both are burdens cast upon the adjacent lands by the laws of nature, and as applied to such creeks and streams as the one in question we have no doubt that the correct rule is 'that waters which have overflowed the banks of a stream in times of freshet, in consequence of the insufficiency of the natural channel to hold them and carry them off, are surface waters, within the meaning of the rules of law relative to such waters.' '' It having now been determined that such waters are governed by the same rule as surface waters, then there is no question about the law in this State as to the rule governing surface waters. It has been decided many times that the servient estate must receive and take care of the waters from the dominant estate. ''Under the rule of the civil law which has been adopted in many jurisdictions in the United States, the right to drain surface waters is governed by the law of nature, as between the owners of adjacent lands, and the lower proprietor is bound to receive surface waters which naturally flow from the land above, and cannot do anything to prevent such flow which will cast it back on the land above. 30 Am. & Eng. Encyc. of Law (2d Ed.) 326; and this doctrine is approved of in the cases of *Bradbury v. Vandalia Drainage Dist.*, 236 Ill. 42; *Gormley v. Sanford*, 52 Ill. 158,

It is contended, however, that the complainants should not have resorted to a court of chancery for relief but were bound to submit their claim for damages to a court of law. It is true, that so far as appears from this record, the damages are not very great, but it also appears that the damages are of frequent occurrence, and that each overflow of the river inflicts upon the complainants the same burdens as the former overflow did, and this will continue as long as the levee is allowed to exist, and for the complainants in each instance to be required to resort to a court of law for relief would certainly result in a great multiplicity of suits, which litigation and expense we do not think they are required to incur in order that they may be relieved from the burdens imposed upon them by this levee. Courts of equity have not hesitated to to take cognizance of questions arising by reason of the obstruction of the natural flow of waters, and thereby giving to the claimants quick and permanent relief from such obstructions, when they in fact existed. It is said: "Where a lower landowner obstructs the natural flow of surface waters from the lands of the upper landowner, the latter may maintain an action for damages, and courts of equity have unhesitatingly granted relief by injunction against further obstruction." 30 Am. & Eng. Ency. p. 329; and this doctrine has been approved and affirmed in the cases of *Espenscheid v. Bauer,* 235 Ill. 172; *Pinkstaff v. Steffy, supra.*

We are satisfied from an examination of the various authorities cited by counsel for complainants and defendants that for the reasons above given a court of chancery had jurisdiction and was a proper tribunal before whom the rights of these defendants to maintain this levee could be determined.

It is again contended by counsel for appellants that appellees by reason of their laches are estopped to claim the interposition of this court by means of a

mandatory injunction. This levee was erected in the year 1903. In the year 1908, according to the testimony of the defendants, it was washed out and rebuilt by the defendants, and there is some testimony in the record tending to show that in the year 1909 it again washed out and was rebuilt. The defendants, however, state that it was simply repaired by placing bags of sand in the washout. At the time the levee was first built, Smith, the then owner of the Shontz tract, served a written notice upon the defendants, at about the time the levee was half completed, not to erect it. It is claimed, however, that Shontz, in 1909, requested them to rebuild the levee; this is denied by Shontz, and he claims that the defendants at the time he first purchased the land, and before he knew anything about the flow of the water there, represented to him that it would be a benefit to his land to rebuild it, and that he told them that if it was a benefit to him he wanted it, if not, he did not want it, and that afterwards when he saw how the waters were held back upon his land he told them he did not want it. The defendants even now in their testimony do not deny but what the water from Shontz's land does naturally flow over their land, and, as we recollect the record, the defendants do not deny having told Shontz that this would be a benefit to his land; but these matters were all before the chancellor and he heard the testimony of the several witnesses with reference to them, and we are of the opinion that his findings with reference to this question ought not to be disturbed. In addition to this it must be borne in mind "that each overflow upon the land of an adjoining owner caused by the negligence or want of skill in a railroad company in its mode of constructing or maintaining an embankment is a fresh nuisance and creates a new cause of action." *Chicago P. & St. L. Ry. Co. v. Reuter, supra; Pinkstaff v. Steffy, supra.*

In the latter case a bill in chancery was filed praying for an injunction restraining the rebuilding of a levee that had been originally constructed more than eighteen years before the commencement of the suit, and an injunction was granted and affirmed by the Supreme Court. We do not believe that the appellees are estopped from this action by reason of their laches.

Counsel for appellants again insist that it appears from the evidence that the damage sustained by these defendants by the removal of the bank of earth is many times that to be sustained by complainants, by the maintenance of it, and will cause more harm than it remedies, and for this reason the court will remit the complainants to a court of law.

It is true, as claimed by counsel, that the removal of this embankment would subject appellants' lands to overflow upon every occasion in which the banks of the river would overflow, and that to permit the levee to remain there would protect the appellants' lands from such overflow, but we cannot say how much more appellants' lands would be benefited than appellees' lands would be damaged; this does not appear very clear from the record. However, we are unable to say that upon any principle appellants ought to be allowed to reap a benefit at the expense of their neighbors by obstructing the natural flow of the water. To do this, would be to say that one neighbor could by the doing of an unlawful act injure another and then defend himself by saying that he did it in the interests of good husbandry; it might be good husbandry to him but would be destructive husbandry to his neighbor. This doctrine is well settled by our Supreme Court in the case of *Pinkstaff v. Steffy,* 216 Ill. p. 413, where this exact question was raised, and the Court said: "It is urged by the plaintiff in error that in the interests of good husbandry he is entitled to maintain the levee to protect his crops from inundation by overflow from the watercourse in question; and if he could so pro-

Shontz v. Metzger, 186 Ill. App. 436.

tect his crops and lands without injuring others the rule invoked would readily be admitted, but the civil law rule of drainage being founded upon natural right, carries with it also the rule that one must so use his own as not to injure another or to deprive another of that right of natural drainage which the law guarantees to him, and if by the construction of the levee in question, although good husbandry may, on the part of Pinkstaff, dictate and justify the same, yet if by so using his land he injures Steffy by depriving him of the enjoyment of the right of natural drainage, then Pinkstaff cannot avail himself of the plea of good husbandry that benefits himself alone and to the injury of his neighbor.'' This doctrine seems to us to be of the highest importance to all persons engaged in agricultural pursuits. That where a man purchases lower lands, perhaps because they are cheaper, that he should have no right to better his lands, increase them in value and cause them to be more productive at the expense of his neighbor who owns a dominant heritage.

Again, it is contended by counsel for appellants that the proof does not warrant a decree in favor of any of complainants, except Shontz and Sasse; this, however, has been disposed of in a former part of the opinion.

The fifth and last objection urged by counsel is that the court erred in refusing to permit an amendment to the answer, and to hear additional evidence after the case had been closed. This was a matter purely within the discretion of the court, and we cannot say from anything that appears in this record that this discretion was abused or that the court erred in refusing the amendment.

After a careful examination of the record and the authorities referred to by counsel for appellants and appellees, we cannot say that the Circuit Court erred in rendering a decree for the complainants, and the decree of the Circuit Court is affirmed.

*Decree affirmed.*