[Civ. No. 23371. Second Dist., Div. One. Aug. 28, 1959.]

HARBOR CHEVROLET CORPORATION (a Corporation), Appellant, v. MACHINISTS LOCAL UNION 1484 (an Unincorporated Association) et al., Respondents.

Potruch & Lerten for Appellant.

Alexander H. Schullman, Rose, Klein & Marias and Ernest L. Graves for Respondents.

WHITE, P. J.—Plaintiff, Harbor Chevrolet Corporation, hereinafter referred to as "Harbor," brought the instant action against the Teamsters Union, Machinists Union and the Painters Union, alleging that on April 13, 1957, the defendant unions entered into an oral agreement with Frederick A. Potruch, attorney for Harbor, that said unions would not picket Harbor in consideration of its said attorney promising to refrain from acting as legal counsel for Freeman McKenzie Ford in connection with the latter's dispute with said union; that said agreement not to picket was to remain in effect until a majority of all of the employees of Harbor joined any one or any combination of said unions, in which case the said unions would meet with Harbor's attorney, Potruch, in an attempt to work out any problems which might exist before picketing Harbor; that said Attorney Potruch fully performed his agreement; but that on July 2, 1957, said unions commenced to picket Harbor without a majority of Harbor's

employees having joined any one or any combination of said unions; that the said picketing was causing irreparable injury to Harbor and there was no adequate remedy at law because of the inability of Harbor to carry on its business so long as the said picketing continued.

After hearing on order to show cause why said unions should not be enjoined from such picketing of Harbor, on August 21, 1957, the court found that Harbor was engaged in interstate commerce within the meaning of the National Labor Relations Act, and at the same time enjoined said unions from picketing in violation of their said agreement.

On November 27, 1957, the court below found the aforesaid unions and certain of their agents in contempt of the said preliminary injunction. Thereafter, a petition for certiorari for review of the order of contempt was denied and on January 13, 1958, a petition for rehearing on said petition for writ of certiorari was also denied. In connection with said proceedings for certiorari, the court below found that Harbor had not violated the National Labor Relations Act.

Upon their written settlement agreement, the preliminary injunction and order *in re* contempt as to Teamsters Union and its agent were vacated on February 7, 1958.

On March 4, 1958, the trial court vacated the preliminary injunction of August 21, 1957, and set aside its order of November 27, 1957, *in re* contempt as to the Machinists and Painters Unions and their agents. From that order of March 4, 1958, Harbor has appealed.

Appellant, in its brief, states that the order setting aside and vacating said preliminary injunction was made upon the "sole ground that the National Labor Relations Act had deprived the court of jurisdiction over this controversy"; and that the sole issue to be determined is "whether the National Labor Relations Act (29 U.S.C.A. § 141, et seq.) has given the National Labor Relations Board exclusive jurisdiction over this controversy and thereby ousted the courts of the State of California of such jurisdiction."

Respondents, however, urge that the possible lack of jurisdiction was not the "sole ground" upon which said order of March 4, 1958, was made and should be sustained; and states that "The order of the court itself recites that it was predicated upon motions, '(1) to vacate, revoke or set aside preliminary injunction, and (2) to reconsider, modify or dismiss preliminary injunction and/or order in re contempt pro-

ceedings'; and further states the order was made after the court had heard the arguments of counsel and had read and fully considered the points and authorities submitted in support of and in opposition to said motions."

An examination of the record indicates that the court below determined that a court which orders an injunction has the power to modify the injunction and any order *in re* contempt based thereon whenever the circumstances and situation of the parties make it just and equitable to do so. At the hearing which resulted in the making of the order which is being considered upon the instant appeal, Harbor contended that "No change of circumstances has been shown which would justify the modification or dissolution of the injunction."

The trial court, during the proceedings and just before setting aside the preliminary injunction and order *in re* contempt, said: "Now, we have two additional factors, one the question of delay, second, the fact that negotiations apparently are impossible . . .

". . . *The preserving of the status quo in this case for the purpose of negotiating, for the purpose of the original contract is nil.* It is of no value. They apparently aren't going to negotiate the way it looks now. That isn't the exact wording of the contract. The wording of the contract is that we won't picket until we get a majority. But that imports first an attempt to get a majority, and it imports that there isn't going to be a stalemate here. I cannot help but read common sense into it that there were and the purpose of these people talking with each other was negotiation.

"I do not know how good a rule that is. But I do know that some eight months have expired and negotiations apparently have not been going on, and there has been an attempt to have the National Labor Relations Board take jurisdiction, and it hasn't taken jurisdiction apparently because of the amount."

Also, as stated by appellant in its brief, "in connection with the contempt proceeding, the aforesaid unions attempted to show that appellant had engaged in violation of the National Labor Relations Act. However, after hearing oral testimony the court below found that appellant had not violated the National Labor Relations Act."

Respondents' statement in this regard is that, during the contempt proceedings, "the court did not feel appellant had violated the National Labor Relations Act in any substantial

manner"; that when the court made the order from which the instant appeal was taken "it took an entirely different position"; that then the "court observed that although Mr. Potruch thought the contract was outside the National Labor Relations Act, and although the court had earlier taken such a position it now thought its previous decision was 'splitting hairs too much' and held the opposite."

The general purpose of a preliminary injunction is to preserve the status quo until the merits of the action can be determined. The granting of a preliminary injunction is within the discretion of the trial court and its action with respect to the denying or dissolving of a preliminary injunction theretofore granted will not be disturbed on appeal, except where it appears that the trial court has abused its discretion. (*Brock* v. *Superior Court,* 11 Cal.2d 682, 688 [81 P.2d 931]; *Isert* v. *Riecks,* 195 Cal. 569, 576 [234 P. 371]; *Hartsif* v. *Wann,* 139 Cal.App.2d 119, 121 [293 P.2d 65]; *Nyman* v. *Desert Club,* 109 Cal.App.2d 63, 66 [240 P.2d 37].)

When, upon motion of the party enjoined, it is found that either the facts or the law upon which such injunction was granted have been changed, or that the ends of justice will best be served by the modification or revocation of the injunction, such relief should be granted. (*Sontag Chain Stores* v. *Superior Court,* 18 Cal.2d 92, 94, 95 [113 P.2d 689]; *Union Interchange Inc.* v. *Savage,* 52 Cal.2d 601, 604 [342 P.2d 249].)

Although not mentioned in the briefs on the instant appeal, it appears from the record that arrangements were made by the trial court to secure a trial date in about 60 days after the granting of the injunction; that defendant Unions then declared they were ready for trial at any time, even before trial would be possible; and that Harbor asked for about 90 days to prepare for trial. The preliminary injunction obviously was granted by the court for the purpose of preventing injury to Harbor's business pending an early trial; and where, as here, no showing of any effort to have the matter set for trial was made, it is not an abuse of discretion to dissolve the injunction after eight months.

Appellant states that "It is well settled that the National Labor Relations Act does not deprive state courts of jurisdiction to enjoin breaches of contract. (Citing cases.)"

In *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board,* 52 Cal.2d 568 [343 P.2d 23], Mr. Justice Peters, speaking for

the entire Supreme Court in an action to compel arbitration pursuant to a labor contract, at pages 576-577, said:

"The basic question presented on this appeal is whether the superior court had jurisdiction to entertain the action to compel arbitration. This depends upon whether the National Labor Relations Act pre-empts state jurisdiction over the controversy.

"A few preliminary remarks are appropriate. In our dual federal-state system clashes between federal and state jurisdiction are inevitable. Nowhere is this conflict more evident and vital than in the field of industrial relations, particularly since the passage of the National Labor Relations Act. By the enactment of that statute the federal government undoubtedly pre-empted exclusive jurisdiction over certain controversies in the industrial field that affect interstate commerce. But it is equally certain that by that statute the federal government did not pre-empt full jurisdiction in this field. Stated another way, the National Labor Relations Act and subsequent statutes in this field do not cover the entire field, but leave to the states power to control many phases of industrial relations involving employers or unions engaged in or affecting interstate commerce. The difficulty comes from the fact that the Congress, and the United States Supreme Court in interpreting the statute, have carefully refrained from stating how much power has been retained by the states and how much of the field has been pre-empted by the federal government. As specific problems are presented, the United States Supreme Court, step by step, determines whether or not the specific problem falls within or without the pre-empted field. This slow and painful process sometimes leads to confusion. Broad statements made in a particular case must always be related to the facts of that case and to the particular problem involved."

Under the facts and circumstances of the instant action, a discussion or statement by this court concerning the power of the state courts to enjoin picketing or breach of contract would serve no useful purpose.

The order of March 4, 1958, from which the instant appeal was taken, is affirmed.

Fourt, J., and Lillie, J., concurred.