[Civ. No. 28433. Second Dist., Div. One. July 31, 1964.]

PARAMOUNT PICTURES CORPORATION, Plaintiff and Respondent, v. BETTE DAVIS et al., Defendants and Appellants; TWENTIETH CENTURY-FOX FILM CORPORATION et al., Interveners and Appellants.

Irving B. J. Levine and Barry L. Hirsch for Defendants and Appellants.

Prinzmetal & Maizlish and Musick, Peeler & Garrett and Bruce A. Bevan, Jr., for Interveners and Appellants.

O'Melveny & Myers and Rodney E. Nelson for Plaintiff and Respondent.

FOURT, J., and LILLIE, J.—This is an application for a writ of supersedeas to stay the enforcement of a preliminary injunction pending an appeal from the injunctive order. The injunction issued in an action commenced by Paramount Pictures Corporation ("Paramount"), against Bette Davis ("Davis") in which Paramount sought to compel performance of a contract.

Under the contract, dated November 11, 1963, Davis was employed by Paramount to act, play and perform the part of "Mrs. Hayden" in the photoplay "Where Love Has Gone," such services to be rendered for a period of "ten (10) consecutive weeks (hereinafter called the 'minimum period'), and as much longer as the Employer may require the Artist's services therein, commencing on December 16, 1963," the services of Davis to be rendered exclusively for Paramount "during the term" of the agreement.

Paragraph Sixth of the contract provides, in pertinent part: "The Artist agrees to appear at the studios of the Employer ... to render the Artist's additional services in connection with the photographing, recording, rephotographing or re-recording of parts or sequences or the making of any retakes, transparencies, trick shots, added scenes or trailers, which may be required in the opinion of the Employer, in connection with the Photoplay, at such times as the Employer may direct after the completion thereof; provided, however, that if the Employer shall require any such additional services at a time or times after the expiration of the minimum period and any extension of the minimum period pursuant to the provisions hereof, the rendition of such additional services by the Artist shall be subject to other actual engagements of the Artist to render the Artist's motion picture services for any other person, firm or corporation which prevent the Artist from so doing at that time; the Artist nevertheless agrees to exert the Artist's best efforts and endeavors so to arrange the Artist's other engagements as to be

available for the rendition of such additional services for the Employer. ... The Artist expressly agrees to be available at all times in Los Angeles, California (or in such other place or location where the Artist may then be), or its environs, for a period of seven (7) days after the expiration of the term hereof for the purpose of rendering the services specified in both this and the preceding paragraph,[1] unless excused in writing by the Employer.''

In Paragraph Sixteenth, it is ''mutually understood and agreed that the Artist's services are special, unique, unusual, extraordinary and of an intellectual character, giving them a peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law, and that the Employer in the event of any breach by the Artist shall be entitled to equitable relief by way of injunction or otherwise.''

It is alleged by Paramount in its complaint that principal photography of said photoplay was commenced on or about December 10, 1963, and was completed on February 10, 1964; that, in accordance with the terms of the contract defendant was paid the sum of one hundred twenty five thousand dollars ($125,000); that after completion of the principal photography, plaintiff determined that defendant's additional services were required in connection with the photographing of an additional scene; that, during the month of March 1964, plaintiff so notified defendant and suggested several dates during the month of April 1964, upon which the added scene might be photographed; that, at the request of defendant, the photographing of the added scene was deferred until and scheduled for May 15, 1964, and that defendant agreed to report at said time; that on May 13, in breach of her contract, defendant declared that she would not render her services in the said added scene on May 15 or at any other time; that ''defendant did not have any actual engagements to render her motion picture services for any other person, firm or corporation on May 15, 1964, or any other of the dates plaintiff'' had suggested for the photographing of said added scene''; and that on May 15, 1964, in breach of her contract, defendant failed to report for or to render her additional services.

In the second cause of action it is alleged that defendant further breached the contract in that she failed ''to use her

---

[1]The provisions of the ''preceding paragraph'' are immaterial to the within proceeding.

best efforts, or any efforts at all, to arrange her engagements for motion picture services to others so as to be available for the rendition of additional services for plaintiff pursuant to Paragraph Sixth of the contract."

It is further alleged that defendant "threatens to, and unless enjoined by this Court will continue to, fail and refuse to perform the obligations of the contract on her part to be performed with respect to the photographing of said added scene, and will, while so in default under said contract, render her services for others in the photographing of motion pictures, all in breach of her obligations under said contract." Plaintiff asserts irreparable injury in that by the absence of said added scene the value of its three million dollar investment in the photoplay "will be lessened in an undeterminable amount" and plaintiff will be placed at a competitive disadvantage; that plaintiff "will be irreparably injured unless said defendant's breach of said contract is enjoined prior to the date by which this case would be set for trial by virtue of the following facts. The scheduled release date for said photoplay is October 10, 1964. In order to meet said release date, it is necessary to film said added scene within four or five weeks from the date of this complaint. The meeting of said release date is of great and immeasurable importance to plaintiff. . . ."

Plaintiff prays that "defendant Bette Davis be enjoined both during the pendency of this action and permanently thereafter from rendering her services in any motion picture photoplay or in any other artistic or dramatic enterprise so long as she remains in default under her contract with plaintiff . . . in the respects alleged herein."

By her answer, defendant admits the making of the contract as above set forth; that she participated in the filming of the photoplay; that the photoplay was completed on February 10, 1964, and that she was paid one hundred twenty five thousand dollars; that, during the month of April 1964, she suggested to her agent several dates during said month upon which the added scene might be photographed; and that on May 13, 1964, she notified plaintiff that she would not report and render her services in the added scene on May 15, 1964. Except as expressly admitted, defendant denies all material allegations of the complaint specifically denying that she requested that the photographing of said additional scene be deferred to and scheduled on May 15, 1964, or that she agreed to report or render services to plaintiff on said date or

at any other time. Defendant affirmatively alleges that she performed her services exclusively for plaintiff until on or about February 10, 1964, at which time photography of plaintiff's photoplay was completed and defendant's exclusive services were no longer required and were in fact completed; that by written contract dated January 23, 1964, she agreed to render her services exclusively to The Associates & Aldrich Company, Inc., in connection with the motion picture entitled "Hush, Hush Sweet Charlotte," commencing on or about April 28, 1964; that by a letter agreement dated April 6, 1964, it was agreed that "rehearsals will start on May 11, 1964, and principal photography will start on May 25, 1964, instead of as now provided in said employment contract"; and that under this agreement Miss Davis is to be paid $200,000 plus a percentage of the net profits. It is alleged that defendant was under legal obligation from May 11, 1964, to render her services exclusively to Aldrich, that she "still is so exclusively engaged thereunder and will be so engaged until the completion of her services thereunder," that since sometime in March 1964, plaintiff had had knowledge of the engagement of defendant's services in behalf of Aldrich, and that the rendering of her services to others is not in breach of any obligation to plaintiff.

Defendant's answer contains 11 affirmative defenses in which it is alleged, in addition to the above allegations concerning her contract with Aldrich, that plaintiff failed to give her written notice as required under the contract; that the provisions of her employment contract with plaintiff were unenforceable in that they are "oppressive, contrary to public policy, and in restraint of trade under the provisions of section 16600 of the California Business and Professions Code"; that it was orally agreed in April 1964, that defendant would not be obligated to perform the added scene if, after viewing the photoplay as then completed, it was her good faith belief that she could not perform the added scene; that thereafter she viewed the photoplay on May 13, 1964, and notified plaintiff that she in good faith believed and felt that she could not perform the added scene; that plaintiff is estopped from asserting that defendant is in default of and breached the agreement because of the representations, allegedly untrue and intended to mislead defendant, and upon which defendant replied, to the effect that she would not be required to render services in the added scene if she in good

faith believed she could not perform the scene; that based upon the same facts, plaintiff waived any obligation on her part to perform such additional services; that the role which plaintiff has requested defendant to portray in said added scene is entirely inconsistent with and contrary to the character, dramatic structure and characterization of the role of "Mrs. Hayden" (Grandmother) which it had been agreed defendant would portray when the employment contract was made; that defendant "is professionally completely unable and incapable of performing the additional scene as it is presently conceived and written"; that an injunction enjoining defendant from rendering her services in any other motion picture photoplay or in any other artistic or dramatic enterprise would amount to specific performance of a contract to render personal services which would create a condition of involuntary servitude in violation of the state and federal Constitutions; and that the "term" of the employment contract is "at an end and that plaintiff is not entitled to the services of defendant at all."

 Pursuant to plaintiff's motion for a preliminary injunction, a hearing was held on June 10, 1964, in respondent court, at which time it had before it the above pleadings, the employment contracts therein referred to, affidavits in support of the motion and counteraffidavits in opposition thereto. On June 12, 1964, the court entered its order, as follows:

5 pm June 16, 1964[2]

"It Is Ordered that, on and after ~~June 12, 1964~~ and continuing during the pendency of this action, or until the Court shall otherwise order, the defendant shall be, and she hereby is, enjoined and restrained from rendering her services in connection with any motion picture photoplay; provided, however, that this Preliminary Injunction

---

[2]The order, as originally prepared, provided that it would be effective on June 12, 1964, unless defendant's statement was filed on or before June 11, 1964. On the morning of June 12, however, after denying defendant's motion for a stay pending appeal, the court determined to change the effective date to June 16 in order to permit defendant an opportunity to apply to an appellate court for a writ of supersedeas. On June 16 the within application for a writ of supersedeas was filed in this court. On that same date, on application of defendant and without objection from respondent, the trial court stayed the effective date of the injunction until June 22, 1964, at 5 p.m. On June 22, this court issued an order to show cause *re* the issuance of a writ of supersedeas, and at the same time granted a temporary stay pending determination of the application.

shall not take effect in the event that defendant files with this Court, on or before June 11, 1964, a statement executed by her wherein defendant represents to this Court that she will render her services for plaintiff at plaintiff's studios in Los Angeles, California, in connection with the photographing, recording, rephotographing and rerecording of an added scene, as required by plaintiff, for the motion picture photoplay entitled 'Where Love Has Gone,' such services to be rendered (i) ~~on a date~~ one day between July 1 and July 10, 1964, inclusive, such date to be designated in writing by plaintiff at least five days in advance of such date, or (ii) on such date prior to July 1, 1964, as the parties may mutually agree;

"IT IS FURTHER ORDERED that the Preliminary Injunction as hereinabove set forth shall issue upon defendant's failure to file the statement hereinabove provided for and upon plaintiff's filing an undertaking in the sum of $175,000, in due form as required by law."

Defendant's motions for a stay pending an appeal were denied by the trial court. No statement as mentioned in the order has been filed by defendant in respondent court, so that provision of the order is now of no effect; the injunctive provisions became effective on June 16, subject to the stays which have been granted.

Petitioner seeks the issuance of a writ of supersedeas "to preserve the status quo of the parties and maintain their relative positions and rights pending a final determination on appeal." The "subject matter of the appeal is as follows: Whether or not petitioner and appellant should be restrained and enjoined from performing her services in any motion picture photoplay, including those services now being rendered for petitioner's present employer, The Associates and Aldrich Company and Twentieth Century-Fox, unless and until petitioner performs additional services for respondent Paramount Pictures Corporation" in view of the "admitted facts: (a) Petitioner was not under an obligation to perform her services exclusively for respondent at the commencement of the action below or at the time of the granting of the order; (b) Petitioner was not in breach of any negative covenant not to render her services to others at the commencement of the action below or at the time of the granting of the order; and (c) Petitioner was duly engaged and actively performing services under a valid agreement to The Associates and Aldrich Company and Twentieth Century-Fox in

the motion picture 'Hush, Hush, Sweet Charlotte,' which motion picture was approximately one-third completed.''

It is well settled that an injunction mandatory in character is automatically stayed on appeal and that a prohibitory injunction is not so stayed (*Byington* v. *Superior Court,* 14 Cal.2d 68, 70 [92 P.2d 896]; *City of Pasadena* v. *City of Alhambra,* 75 Cal.App.2d 91, 95 [170 P.2d 499]), ''the object of the rule in both cases being to preserve the *status quo.* Otherwise the result of the final adjudication might often be a barren victory.'' (*Dewey* v. *Superior Court,* 81 Cal. 64, 68 [22 P. 333].) ''The character of an injunction, however, and whether it is prohibitive or mandatory in its operation upon the parties whom it affects, is determined not so much by the particular designation given to it by the court directing its issuance, as by the nature of its terms and provisions, and the effect upon the parties against whom it is issued. . . . As a general rule, we think we may say that when the injunction merely grants preventive relief it is prohibitive, but when it directly or indirectly grants affirmative relief it is mandatory.'' (*Ohaver* v. *Fenech,* 206 Cal. 118, 122 [273 P. 555].) As stated in *Musicians Club of Los Angeles* v. *Superior Court,* 165 Cal.App.2d 67, 71 [331 P.2d 720]: ''An order enjoining action by a party is prohibitory in nature if its effect is to leave the parties in the same position as they were prior to the entry of the judgment. On the other hand, it is mandatory in effect if its enforcement would be to change the position of the parties and compel them to act in accordance with the judgment rendered.'' And as the court stated in *Feinberg* v. *One Doe Co.,* 14 Cal.2d 24, 28 [92 P.2d 640]: ''It is, of course, elementary that this court will not be bound by the form of the order but will look to its substance to determine its real nature.''

It has long been the law that ''an injunctive decree that compels the surrender of the lawful possession of real property amounts to the granting of affirmative relief and is mandatory in character.'' (*Byington* v. *Superior Court, supra,* 14 Cal.2d 68, 70.) This rule has been applied to the surrender of or change in other rights. The court said in *Dosch* v. *King,* 192 Cal.App.2d 800, 804 [13 Cal.Rptr. 765]: ''An injunction is prohibitory if it merely has the effect of preserving the subject of the litigation *in statu quo,* while generally it is mandatory if it has the effect of compelling performance of a substantive act and necessarily contemplates a change in the

relative rights of the parties at the time injunction is granted. If an injunction compels a party to surrender a position he holds and which upon the facts alleged by him he is entitled to hold, it is mandatory. [Citations.] An injunction is prohibitory if its effect is to leave the parties in the same position as they were prior to the entry of the judgment, while it is mandatory in effect if its enforcement would be to change the position of the parties and compel them to act in accordance with the judgment rendered. [Citation.]''

In *Feinberg* v. *One Doe Co., supra,* 14 Cal.2d 24, the court said at page 27: ''Although the form of the order appealed from purports to be prohibitive in that defendants are enjoined and restrained 'from employing, and continuing to employ, or hereafter employing Amelia Greenwood while she is not a member in good standing of said International Ladies' Garment Workers Union,' it is quite obvious that said order is in its essence and effect a mandatory injunction. It is an order compelling affirmative action on the part of the defendants. Inasmuch as Amelia Greenwood at the time of the issuance of the order was already in the employ of the defendants, and the very controversy arose out of the *continuance* in employment of said Amelia Greenwood, it is apparent that the result intended to be accomplished by the issuance of said order was the compulsory release of said Amelia Greenwood from employment by the defendants. In short, the order directed and commanded the defendants to discharge said employee.'' It was held that said order was stayed by appeal. In *People* v. *Stutz,* 66 Cal.App.2d 791 [153 P.2d 182], the judgment declared that the use of portions of a building constituted a public nuisance, and it was ordered that all use of such portions cease until major changes be made. The court had this to say at page 794: ''It is clear that while the injunction did not in express terms command petitioners to vacate the building and to cancel their contracts with the occupants of the rooms by compelling them to vacate, such was the necessary effect of the order. The changes in the building were major and it is clear that it could not be occupied by guests during the period of reconstruction. Thus petitioners' right to use the property under their lease was interfered with. Such a right is a vested property right. Also petitioners' contracts with their guests would of necessity be terminated during the period of remodeling. Thus the injunction necessarily contemplated, and its enforcement would compel a change in the position and rights of petitioners and

force them to surrender a position and property rights which they lawfully held at the time it was issued by causing them and their tenants to vacate during the remodeling period. Thus by requiring an affirmative action on the part of petitioners and the abandonment of their property rights, the effect of the injunction is mandatory and is automatically stayed by the appeal.''

*Ambrose* v. *Alioto,* 62 Cal.App.2d 680 [145 P.2d 32], appears to be closely in point. In a specific performance action, judgment was entered for plaintiff and defendant was required to execute a bill of sale to a fishing vessel. The judgment also restrained defendant from delivering to Sun Harbor Packing Company or to anyone other than Westgate Sea Products Co. any fish caught on any fishing voyage made by said vessel. Defendant's contract with Westgate had expired on May 6, 1943; thereafter, defendant entered into a contract with Sun Harbor Packing Company and delivered its catch to that company. It was held that the injunctive order was mandatory in effect and stayed by the appeal. The court states at page 685: ''An injunction or decree is purely prohibitory, which merely has the effect of preserving the subject of the litigation *in status quo,* while, in general, an injunction or decree is mandatory if it has the effect of compelling the performance of a substantive act and necessarily contemplates a change in the relative position or rights of the parties *at the time the injunction is granted or the decree entered.* Hence, if the injunction compels a party affirmatively to surrender a position which he holds and which upon the facts alleged by him he is entitled to hold, it is mandatory.'' The court states that, based upon the allegations, ''it clearly appears that *at the time the decree was entered or injunction granted,* a contract had been made for delivery of the fish to the Sun Harbor Packing Company and that delivery had been and was being made in compliance therewith; that the judgment reciting that defendant be restrained from delivering to Sun Harbor Packing Company or to anyone other than Westgate Sea Products Co. is but another means of stating that defendant must cease delivering to Sun Harbor Packing Company and must deliver fish to Westgate Sea Products Co. The result and effect of the decree is not only mandatory in character but compels the performance of a substantive act and also contemplates a change in the relative position or rights of the parties which existed *at the time the decree was entered.* The terms of the decree under consideration being

mandatory in effect, the perfection of the appeal operated to automatically stay proceedings in the lower court in reference thereto and the trial court was and is without jurisdiction to compel obedience to that portion of the decree.'' (*Id.* at p. 686.) (See also *Bowers* v. *Department of Employment,* 183 Cal.App.2d 686, 688 [7 Cal.Rptr. 14]; *Johnston* v. *Superior Court,* 148 Cal.App.2d 966, 969-970 [307 P.2d 946]; *Podesta* v. *Linden Irrigation Dist.,* 132 Cal.App.2d 250, 261 [281 P.2d 905]; *City of Pasadena* v. *City of Alhambra, supra,* 75 Cal.App.2d 91, 95-98.)

■ It is clear that the injunctive order, although framed in prohibitory language, was intended to coerce or induce defendant into immediate affirmative action, i.e., to make the additional scene for Paramount. In the absence of such affirmative action by defendant, the order requires her to breach her contract with Aldrich. ■ The employment contract between the parties contained no express negative covenant. It is conceded by plaintiff that the exclusive term thereof expired on February 17, 1964. Therefore, the making of the contract between defendant and Aldrich and the rendering of services thereunder by defendant commencing in May 1964, do not in themselves constitute a breach of the Paramount contract. ■ As of the date of the commencement of plaintiff's action, and at the time the injunction issued, defendant was performing her services pursuant to the Aldrich contract. The injunction, therefore, does not tend to maintain the status quo as it existed at the time of its issuance. Rather, it compels defendant to violate her contract with Aldrich and to surrender a status and rights lawfully held by her at the time the injunction issued. Such an order is mandatory in character within the meaning of the above cited authorities and therefore is automatically stayed by the appeal therefrom.

■ The usual purpose of a temporary injunction is to preserve conditions as they are until after trial and judgment. (*Stewart* v. *Superior Court,* 100 Cal. 543, 546 [35 P. 156, 563]; *Harbor Chevrolet Corp.* v. *Machinists Local Union 1484,* 173 Cal.App.2d 380, 384 [343 P.2d 640]; *Wind* v. *Herbert,* 186 Cal.App.2d 276, 283 [8 Cal.Rptr. 817].) ■ The within preliminary injunction not only does not preserve the status quo—its effect is to grant to Paramount all of the injunctive relief requested in its complaint and to accomplish the main purpose of the action in advance of a trial on the merits. Rarely will such a mandatory injunction

issue. (*Gardner* v. *Stroever*, 81 Cal. 148, 150 [22 P. 483, 6 L.R.A. 90]; *Allen* v. *Hotel & Restaurant etc. Alliance*, 97 Cal.App.2d 343, 348 [217 P.2d 699]; *Bo Kay Chan* v. *Gerdon Land Co.*, 103 Cal.App.2d 724, 726-728 [230 P.2d 1]; *Hagen* v. *Beth*, 118 Cal. 330, 331 [50 P. 425]; *Alvarez* v. *Eden Township Hosp. Dist.*, 191 Cal.App.2d 309, 312 [12 Cal.Rptr. 661]; 15 A.L.R.2d 213, 312, 323-325.) ▮▮ Whether or not the circumstances of this case justify such a preliminary order is a question to be determined upon the appeal. Both parties have presented strong arguments herein in support of their respective positions, which indicate that one or the other party will probably suffer by the granting or refusal of the writ of supersedeas. In view of our conclusion that the stay is automatic, we deem it unnecessary to weigh these arguments as we would if the question of the issuance of the writ was solely a matter of discretion.

▮▮ It is clear from the record before us that, although the order of June 12, 1964, restrains defendant from rendering her services in connection with *any* motion picture photoplay, the primary concern of Paramount is to have defendant perform the additional scene for it at the present time, i.e., at a date prior to the completion of her services under the Aldrich contract. Insofar as the order enjoins such contractual services, it is mandatory and automatically stayed; nevertheless to obviate any question in this regard we deem it appropriate that the writ issue in this respect. To the extent that the order restrains any further services by defendant in connection with any motion picture photoplay, other than those to be performed under the Aldrich contract, the order is prohibitory and is not stayed by the appeal. Petitioner, however, has made no showing for the necessity of the writ in this respect and, to this extent, the application is denied.

Let a writ of supersedeas issue accordingly.

WOOD, P. J.—I dissent. The trial court found that appellant breached her contract. For the purposes of ruling upon the petition for a writ of supersedeas, this court should recognize that finding. Under the evidence the trial court could properly find that appellant did not use her best efforts to assist in completing the picture, but on the contrary she intentionally delayed the time for performing until she was employed elsewhere. In my opinion this is not a mandatory injunction. A writ of supersedeas should not be issued.