William Espenscheid, Defendant in Error, *vs.*
John Bauer, Plaintiff in Error.

*Opinion filed June 18, 1908.*

1. Appeals and, errors—*a perpetual easement of passage is a
freehold interest.* A decree perpetually enjoining interference by
the defendant with complainant's easement of passage through a
lane running through the defendant's land involves a freehold and
an appeal lies direct to the Supreme Court.

2. Injunction—*easement need not be first established at law.*
A court of equity will restrain interference with the enjoyment of
an easement, even though the easement has not been established at
law, where it appears that the right is clear and certain and that
an injurious interruption thereof is threatened.

3. Same—*owner of easement of passage may enjoin interfer-
ence therewith.* One who has an easement of passage through a
lane across the lands of another may enjoin the latter from placing
obstructions in the lane, pasturing stock there or making such other
use thereof as is inconsistent with its character as a private way
and amounts to a practical denial of complainant's rights.

Writ of Error to the Circuit Court of Tazewell county;
the Hon. T. N. Green, Judge, presiding.,

Sheen & Miller, (Joseph A. Weil, of counsel,) for
plaintiff in error.

George J. Jochem, for defendant in error.

Mr. Justice Carter delivered the opinion of the court:

The circuit court of Tazewell county, on September 24,
1907, issued a perpetual injunction upon the prayer of de-
fendant in error, Espenscheid, enjoining plaintiff in error,
Bauer, and those claiming under him, from erecting or
maintaining obstacles of any kind in a certain lane about
twenty feet in width, and from pasturing stock therein, and
also commanding him to remove all obstacles already placed
in said lane. From this decree Bauer sues out a writ of
error to this court.

It appears that Espenscheid is the owner of the south-east quarter of the south-west quarter of a certain section 16, in said county, as well as of adjoining land in other quarter sections, and Bauer is the owner of the remainder of said south-west quarter of said section 16. A public road runs along the west side of said section, and the lane in question, starting at said road at about the center of the west line of said quarter section, runs east for about one hundred rods,—in other words, for eighty rods through the land owned by Bauer on both sides, and for about twenty rods between the land of Espenscheid and Bauer. This lane appears to be the only means of communication which defendant in error has with the public highway. It is evident from the record that the lane has been in that general location for a very long time. None of the witnesses on either side can remember when it was not there, either as a road or lane, and many of them were raised in that immediate vicinity and can remember back for over fifty years. It was testified that the lane used to be a public highway long ago and was closed up except as to this one hundred rods, but this was denied by some of the witnesses. The land now owned by defendant in error had been owned by him since 1878, and was owned by his father before him, from about 1848. Plaintiff in error had owned his land about eleven years. Previous to that it was owned by Lux, one of the witnesses, and his father, whose title reached back to 1865 or 1866. It is not contradicted that the lane, in at least part of its width, has been used for at least fifty years as the only means of access from the Espenscheid farm to the public highway on the west of the section. When first established the lane was apparently more than twenty feet in width. In about 1896 Bauer moved the south fence of the west eighty rods into the lane twelve feet, more or less. Afterwards Espenscheid moved his side of the fence on the east eighteen or twenty rods of the lane into the road. Various witnesses testified

that it was moved from four and one-half to eighteen feet. Espenscheid puts it four and one-half to five feet, while Bauer states it was twelve feet. Defendant in error claims that this fence was moved because Bauer allowed his cattle to pasture in the lane, and in order that they could not reach over the fence and injure a row of peach trees planted there. He offered in the bill and on the witness stand to replace the fence further south if Bauer would keep his cattle out of the lane. Espenscheid claims that before moving this fence he asked and obtained from Bauer permission to do so. According to Bauer's testimony the matter was apparently talked over and left open, Bauer neither giving nor definitely withholding his permission. Shortly after this east part of the fence was moved by Espenscheid, the plaintiff in error moved the portion of the fence opposite it on the north side into the lane some three and one-half feet, or straightened an angling fence into a line fence. There appears to have been a gate at the west end of the lane near the public road for many years, except for short periods when it was down for want of repairs. It is claimed by plaintiff in error that the gate which used to be at the east end of the lane, where it did not intervene between Espenscheid's house and the highway, has been moved by Bauer to a situation near the center of the west eighty rods of the lane. Espenscheid also testified that Bauer had dug several small drains across the right of way. The bill alleges that Bauer was about to pasture cattle in the lane, and it appears from the testimony that he had done this at times before and has done it at times since the filing of the bill. The act, however, which seems to have caused the bringing of this suit was the construction by Bauer of a barbed wire fence so as to practically continue for about twenty rods eastward what is apparently now his south fence on the west eighty rods of the lane. Before this the south fence of the east end of the lane had been some four feet to the south of where the new fence was put in, and there

was a gate at its east end, through which passage could be had to the Espenscheid house and farm lying to the south of the gate. The new fence had no gate in it and practically cut off defendant in error from all communication with the lane until he pulled down four or five rods of it. The temporary injunction in this case was issued, in the absence of a judge, by a master in chancery. The same master was afterwards authorized to take proofs, and he reported that the injunction should be granted as prayed. Exceptions were filed to his report, which were overruled, and the court entered the decree as set forth above.

A perpetual easement involves a freehold, and therefore the case was properly brought direct to this court. *Chaplin* v. *Commissioners of Highways,* 126 Ill. 264; *Funston* v. *Hoffman,* 232 id. 360.

Plaintiff in error urges that the injunction should not have been issued in this case because the defendant in error had not first established his rights in the easement in question by an action at law. No question of the jurisdiction of equity over this case appears to have been raised by the pleadings, and as the case is not foreign to equity jurisdiction it might well be held that plaintiff in error's contention could not be raised in this court. (*Yeager* v. *Manning,* 183 Ill. 275.) The rule, moreover, is well settled that a court of equity will restrain an interference with the enjoyment of an easement, even though the same has not been established at law, if it appears that the right is clear and certain and that an injurious interruption thereof is threatened. (Jones on Easements, sec. 883.) The actions of plaintiff in error as shown in this record are of such a nature as to justify interference by a court of equity. The only means of ingress and egress that defendant in error possessed between his farm and the road was through this private way or lane in question. Defendant in error's easement or right of passage, as an incident to the ownership of his farm, was shown without contradiction. The only

possible question of controversy on this record is as to the
width of this lane or right of passage. It has been held
by this court that it is not necessary, in such a case as this,
that the easement claimed be really necessary for the enjoy-
ment of the property; it is sufficient if it is highly con-
venient and beneficial. (*Newell* v. *Sass,* 142 Ill. 104.) The
width of the right of passage,—at least to the extent of
twenty feet, as found by the decree of the trial court,—its
connections and the uses to which it has been and is sus-
ceptible of being hereafter devoted are not involved in
any doubt. "Irreparable injury, as used in the law of in-
junctions, does not necessarily mean that the injury is be-
yond the possibility of compensation in damages nor that
it must be very great; and the fact that no actual damages
can be proved, so that in an action at law the jury could
award nominal damages, only, often furnishes the very best
reason why a court of equity should interfere in a case
where the nuisance is a continuous one." (*Newell* v. *Sass,
supra.*) An injunction will lie, on the ground that there
is no adequate remedy at law, to prevent the erection of a
gate across a private alley, at the suit of an abutting owner
having an easement over such alley. (*Smith* v. *Young,* 160
Ill. 163; see, also, *Schmidt* v. *Brown,* 226 id. 590; *Powers*
v. *Heffernan,* 233 id. 597; *Cihak* v. *Klekr,* 117 id. 643;
*Field* v. *Barling,* 149 id. 556; *Wente* v. *Commonwealth
Fuel Co.* 232 id. 526.) This right of way was acquired
by prescription, and plaintiff in error has no right to hinder
or obstruct its use. (Jones on Easements, sec. 415.) The
defendant in error has a right to all such things as are
necessary to preserve the easement. He may keep it in re-
pair and have right of access to make necessary repairs.
(*Wessels* v. *Colebank,* 174 Ill. 618.) While the right of
way in question is only an easement and plaintiff in error
has a mutual right with the defendant in error to use it
for all proper purposes as a right of way, yet he has not
the right to make other uses of it which are not consistent

with its character as a private right of way. It cannot lawfully be used as a place for feeding, keeping or grazing stock. (*Truax* v. *Gregory*, 196 Ill. 83.) As was said by this court in the case just referred to (p. 90): "It is a way for ingress and egress for those entitled to use it, and cannot lawfully be devoted to purposes inconsistent with such use of it." We do not think there has been any such use of this right of way by plaintiff in error, shown on this record, for grazing purposes in the past, as will justify a court of equity in holding that the easement of defendant in error was subject to such right. Indeed, from the evidence produced we think the use for pasturage purposes attempted by plaintiff in error was such as to make it unsafe for defendant in error's wife and children to pass through the lane, and was thus practically a denial of ingress and egress.

It is also contended that as the fence in front of defendant in error's residence was torn down to the extent of four or five rods no obstruction existed at the time of the filing of the bill, and therefore the injunction should not have been issued. (*Horner* v. *Keene*, 177 Ill. 390.) It is obvious from this record that a part of this wire fence was standing at the time the bill was filed, and that the gate across the lane about half way between the defendant in error's residence and the road was still in place. It is also very plain from this record that there is reasonable ground for believing that plaintiff in error will use the right of way in question, for pasturing or other purposes, in a manner inconsistent with its character as a private right of way for defendant in error unless restrained from so doing.

Plaintiff in error further contends that the denial of the right of defendant in error to the private way in question cannot be held to present such a strong case of pressing necessity that a court of equity would feel constrained to grant relief before that right had been established by law, citing in support of this contention *Oswald* v. *Wolf*, 129 Ill.

200, and *Pratt* v. *Kendig,* 128 id. 293. We do not think there is any force in this contention, so far as concerns the easement to the width covered by the decree of the trial court. While we are inclined to think that the testimony shows that the right of passage originally existed over a width of thirty-two or thirty-three feet and continued that way for many years, we are not prepared to hold that the doctrine invoked by plaintiff in error in the authorities just cited should not control as to the excess of such easement over and above said twenty feet in width.

The decree of the circuit court is fully justified from the facts in this record, and will accordingly be affirmed.

*Decree affirmed.*