[Civ. No. 24569. Second Dist., Div. Two. Nov. 10, 1960.]

MICHAEL M. WIND et al., Respondents, v. BOW HERBERT et al., Appellants.

Hansen & Dolle and Victor R. Hansen for Appellants.

Loeb & Loeb, John L. Cole and Jerome L. Goldberg for Respondents.

FOX, P. J.—This is an appeal by appellants from an order granting a preliminary injunction ancillary to an accounting, declaratory relief, and dissolution of a limited partnership. The action grows out of the financial operations of a card club in the city of Gardena known as The Gardena Club.

The plaintiffs, Wind, Klein and Campbell, are limited partners; the defendants, Bow Herbert and his wife Nancy, are general partners. Mr. Herbert is also a limited partner and general manager of the club.

The preliminary injunction enjoins the Herberts from doing any of the following acts:

"1. Issuing any checks or drafts drawn against the funds or deposits of The Gardena Club, a limited partnership, without said checks or drafts bearing the signature of either plaintiff Murray Klein or plaintiff Adam S. Campbell;

"2. Withdrawing any funds of said limited partnership from any and all bank accounts in which said funds may be on deposit without said withdrawals being approved by either plaintiff Murray Klein or plaintiff Adam S. Campbell;

"3. Depositing the receipts of The Gardena Club, a limited partnership, in any bank account not requiring the signature or authorization of either plaintiff Murray Klein or plaintiff Adam S. Campbell for withdrawals;

"4. Paying to Bow Herbert or Nancy Herbert any sum of money other than a pro rata payment of profits, if any, and when profits are paid to all partners."

The verified complaint and affidavits filed in support of plaintiffs' application for a preliminary injunction established, among others, the following facts: That in October, 1952, the city of Gardena issued to defendant Bow Herbert a license to operate a card club.\* This license, which is in full force and effect, is held in trust by him for the benefit of all the individuals here involved. Upon the issuance of the said license, plaintiffs and defendants initially formed a partnership known as The Western Properties Company which, together with Mr. Herbert individually, operated a card club known as The Gardena Club. This operation was the predecessor in interest to the partnership involved herein.

---

\*Draw poker had been legalized in the city of Gardena.

In 1955 the card club operation was reorganized into the presently existing limited partnership known as The Gardena Club, a limited partnership. In connection with this new organization, the parties executed a written agreement and assigned all the assets of the partnership to the new organization, which is also managed by Mr. Herbert. The controversy here centers, to a considerable extent, around the provisions of section fifteen of the partnership agreement, which reads as follows:

"1. Books of account shall be kept and entries made therein of all monies received or property received by said Limited Partnership and all debts owed by said Limited Partnership and all other transactions of business of said Limited Partnership. Said books of account and all other necessary records shall be kept where said business of the Limited Partnership is conducted and carried on and shall at all times be open for the examination and inspection of all partners.

"2. All moneys of said Limited Partnership shall be deposited in a Partnership Account in California Bank at Gardena, County of Los Angeles, California.

"3. All withdrawals from said account shall be made by check signed by one general partner and Murray Klein or Adam S. Campbell."

Plaintiffs' affidavits reveal that prior to November 30, 1959, defendant Bow Herbert established with the California Bank, at Gardena, three separate bank accounts, with the funds of said club, denominated as: finance account, payroll account, and expense account. The finance account was set up by said defendant so as to require the signature of plaintiff Klein as well as his own for withdrawals from said account, but no signature other than that of defendant Bow Herbert was required for withdrawals from either the payroll or expense accounts. Plaintiffs made demand upon said defendant that he comply with the provisions of section fifteen, *supra*, to the effect that all withdrawals shall be made by check signed by one general partner and either plaintiff Klein or plaintiff Campbell; that said defendant refused to comply with such demand; that thereupon plaintiffs furnished the California Bank the requisite signature cards for such payroll and expense accounts; that said defendant Herbert refused to change the structure of said accounts so as to make the signature of Klein or Campbell necessary for withdrawals from said accounts; that the California Bank then requested that all said partnership accounts be removed from said bank;

that thereafter said defendant Herbert removed said accounts to the Bank of America, in Gardena, and established them under the same designations as had theretofore prevailed; that said defendant Herbert had instructed said bank to permit plaintiff Klein to affix his signature to checks for withdrawals from the finance account but only as an alternate and not as a mandatory signature. Thereupon plaintiffs demanded that Herbert establish these accounts so as to make the signatures of either Klein or Campbell necessary for withdrawals from each of said partnership accounts. Defendant Herbert refused to comply with said demand. Subsequently, the Bank of America requested that all said accounts be removed from its bank. In compliance with said request, defendant Herbert removed all partnership funds to an account in the Bank of Tokyo of California, which account is designated "Bow Herbert, Special Account"; that said defendant Herbert is now depositing partnership receipts in said account and making disbursements therefrom; that said account requires only the signature of defendant Bow Herbert in order to make withdrawals. Plaintiffs further state that they did not ascertain until the latter part of January, 1960, the existence of said special account or the bank in which the partnership funds had been deposited after the removal of the accounts from the Bank of America. Plaintiffs also state that they have no way of determining the nature or propriety of the disbursements being made by defendant Bow Herbert from said account; that despite demands made upon him by plaintiffs, he has refused to explain, verify or account for the disbursements of partnership funds; that by reason of his absolute control over the receipts and disbursements of the Gardena Club said defendant is in a position to entirely dissipate said funds.

Plaintiffs assert that defendant Bow Herbert is charging against said partnership funds sums in excess of $1,000 per month for "public relations"; that said charges are unverified and unexplained although demands have been made by the plaintiffs upon defendant for explanation.

Plaintiff Wind states that he has been informed by the accountant for the partnership that said "public relations" charges are unverified and therefore nondeductible items for income tax purposes; and that he has been informed by the personal secretary of said defendant that a portion of the moneys charged as "public relations" is received directly by

said defendant. These expenditures are made from the expense account.

Plaintiff Klein states that this account is set up so as not to require any signature for withdrawals other than that of Bow Herbert in order to withhold from plaintiffs any information relative to the nature of said "public relations" expenditures and to whom said expenditures are made.

It is further stated in plaintiffs' verified complaint that defendants Bow and Nancy Herbert have charged numerous personal living and traveling expenses to said partnership. The complaint also states that defendant Bow Herbert has drawn and charged said partnership with personal salaries in excess of $65 a day for periods of time which are known to said defendant but which are unknown to the plaintiffs; that the partnership agreement does not provide for the drawing by said Bow Herbert of personal salary, and that therefore such drawings of salary payments are unauthorized. Certain other charges are made by the plaintiffs against the defendants but they need not here be delineated.

In his affidavit, defendant Bow Herbert states, *inter alia,* that for a period of approximately five years all income and proceeds of the business were deposited in a bank account known as the finance account; that checks drawn thereon were required to be signed by a general partner and a special partner; that from this account checks were customarily drawn for deposit in the special accounts known as the payroll account and expense account; that as a matter of convenience the checks drawn on these two latter accounts were signed only by a general partner; that no objection was made to this procedure by any of the plaintiffs until a few months prior to the initiation of this litigation. He further states that by reason of the threatened litigation, both the California Bank and the Bank of America declined to carry the partnership accounts, and that in order to operate the partnership business it was necessary for him to obtain another banking facility. Bow Herbert further states that at the inception of the partnership and throughout its existence and up until a few months prior to the instant litigation, the parties had all agreed that an expenditure of approximately $1,000 a month for public relations was both desirable and necessary and for the benefit of the partnership and that plaintiffs specifically authorized and approved such expenditures.

Affiant Herbert also states that while the partnership agree-

ment does not authorize the payment of salary to the manager of the partnership business, it likewise does not prohibit the payment of such a salary and that following the formation of the partnership it had been orally agreed by all the parties that he would be paid a salary for his services as manager, and that he had in fact been paid a salary therefor without any objection from the plaintiffs up until a short time prior to the filing of this action. Said affiant denied that any of the personal living expenses of himself or his wife or any traveling expenses had been charged to the partnership.

The business of the partnership is quite substantial. The affidavit of defendant Bow Herbert states that its annual income is in excess of one million dollars, and that the partnership distributed profits in 1959 of approximately $164,000. Although there is some uncertainty as to the precise percentage each of the partners owns in the venture, it appears that the plaintiffs have approximately a one-half beneficial interest therein while the defendants own the other half.

The precise question for determination on this appeal is: Did the trial court abuse its discretion in granting the preliminary injunction? We have concluded that it did not and that the order must therefore be affirmed.

At the outset, it should be noted that "The general purpose of a preliminary injunction is to preserve the status quo until the merits of the action can be determined." (*Harbor Chevrolet Corp.* v. *Machinists Local Union 1484*, 173 Cal. App.2d 380, 384 [343 P.2d 640].) "Whether a preliminary injunction shall be granted rests largely in the discretion of the trial court and will not be reversed on appeal unless there is a manifest abuse of discretion." (*Isthmian S.S. Co.* v. *National Marine etc. Assn.*, 40 Cal.2d 433, 435 [254 P.2d 578]; *Ingrassia* v. *Bailey*, 172 Cal.App.2d 117, 125 [341 P.2d 370]; *Daniels* v. *Williams*, 125 Cal.App.2d 310, 312-313 [270 P.2d 556].) In passing on an order made on affidavits involving the decision of a question of fact, a reviewing court is bound by the same rule as where oral testimony is presented for review. When an issue of fact is determined on affidavits, the rule on appeal is that those affidavits favoring the contentions of the prevailing party establish not only the fact stated therein but also such inferences as reasonably may be drawn therefrom, and where there is a substantial conflict in the facts stated, determination of the controverted facts by the trial court will not be disturbed. (*Griffith Co.* v. *San Diego College for Women*,

45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349].) ▮ It should also be pointed out that the relationship between partners is of a fiduciary character which imposes upon the parties the duty of good faith and fair dealing and requires that none of the partners may be permitted to take any unfair advantage. (*Nelson* v. *Abraham,* 29 Cal.2d 745, 750-751 [177 P.2d 931].)

▮ It is apparent from the résumé of the affidavits that there is a sharp conflict between the statements made by plaintiffs and those made by the defendants. Implicit in the court's order granting the preliminary injunction is the fact that the trial judge resolved those conflicts in favor of the plaintiffs. Upon making such resolution the trial court could impliedly find (and we must assume did so find) from the material before it that defendants had violated both their fiduciary duty and contractual obligations in establishing a bank account of partnership funds in the Bank of Tokyo of California without the knowledge or consent of the plaintiffs and without any provision for cosigning by either plaintiff Klein or Campbell for withdrawals from said account; that there was a failure on the part of defendants to make a full or any disclosure to the plaintiffs, or any of them, as to either the nature or extent of the expenditure of the partnership funds; that there was a substantial showing of misuse by defendants of partnership funds; that there was a controversy as to whether Bow Herbert was entitled to draw a salary; that defendant had the partnership funds completely under his control and was therefore in a position to arbitrarily operate the partnership business and dissipate the partnership funds.

This factual picture amply supports the exercise of the trial court's discretion in granting the preliminary injunction. (See *Kendall* v. *Foulks,* 180 Cal. 171 [179 P. 886].) ▮ Also, in considering the application for the preliminary order the court could, and undoubtedly did, weigh the probable injury which would ensue to plaintiffs by denying the temporary relief as against the absence of probable injury which would accrue to the defendants by granting it. (*Sommer* v. *Metal Trades Council,* 40 Cal.2d 392, 402 [254 P.2d 559] ; *Ingrassia* v. *Bailey, supra.*)

▮ Defendants argue that there was no showing that a preliminary injunction was necessary to prevent "irreparable injury" to the partnership assets. They contend that any conceivable future injury would be readily ascertainable and could be compensated by money damages and that there is no

claim that defendants could not respond in damages. However, this argument is without merit.

The concept of "irreparable injury" which authorizes the interposition of a court of equity by way of injunction does not concern itself entirely with injury beyond the possibility of repair or beyond possible compensation in damages. (*Edelman Bros. Inc.* v. *Baikoff,* 277 Ill.App. 432.) Rather, by definition, an injunction properly issues in any case where "it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief." (Civ. Code, § 3422.) Further, the equitable rule as stated by the Supreme Court in *Anderson* v. *Souza,* 38 Cal.2d 825, at 834 [243 P.2d 497], is that: "The term 'irreparable injury' . . . means that species of damages, *whether great or small, that ought not to be submitted to on the one hand or inflicted on the other.*" (Emphasis added.) See *Espenscheid* v. *Bauer,* 235 Ill. 172 [85 N.E. 230]. In *Commonwealth* v. *Pittsburgh & Connelesville R.R. Co.,* 24 Pa. 159, the court said, at page 160 [62 Am.Dec. 372] : "The argument that there is no 'irreparable damage,' would not be so often used by wrongdoers if they would take the trouble to observe that the word 'irreparable' is a very unhappily chosen one, used in expressing the rule that an injunction may issue to prevent wrongs of a repeated and continuing character, or which occasion damages estimable only by conjecture and not by any accurate standard. . . . Besides this, where the right invaded is secured by . . . contract there is generally no question of the *amount* of damages, but simply of the *right.*" (Emphasis added.) In the instant case, the wrongs complained of were obviously of "a repeated and continuing character" and the rule stated in the case last cited is clearly apposite.

Plaintiffs contended before the trial court that unless defendants were restrained by injunction, they would continue to dissipate the assets of the partnership by unwise and unauthorized disbursements to themselves or others from partnership funds over which defendants have usurped complete control. The trial court impliedly found merit in this contention. It could further have determined that such disbursements could not be adequately traced and that the accounting ordered by the court incident to dissolution of the partnership might not fully disclose the damages suffered by plaintiffs. Further, use by defendants of partnership assets for their own gain and to the detriment of plaintiffs is a species of damage, "that ought not to be submitted to on the one hand

or inflicted on the other." Such acts would constitute a flagrant breach of trust. Under the circumstances, the trial court properly issued a preliminary injunction to assure that the partnership assets will remain intact pending an accounting and a final hearing on the merits. This is, of course, an exercise of the court's right and duty to maintain the status quo pending the trial on the merits.

Defendants, however, argue that the effect of the preliminary injunction which requires the signature of either Klein or Campbell along with that of Bow Herbert for all withdrawals from the partnership bank accounts, goes beyond maintaining the status quo of the operation of the business as it existed at the time this suit was filed. Be that as it may, the requirement of such a joint signature for withdrawals is the only practical way of protecting the partnership funds pending a trial of the case on its merits. There can be no doubt that the court had authority to include this requirement in the injunction.

 Defendants argue that the preliminary injunction is too broad in that it prevents payment of any salary to Bow Herbert for his services pending trial on the merits. The partnership agreement contained no provision authorizing such payment. Absent an express agreement, a partner is not entitled to any compensation for his services to the partnership other than his share of the profits. (*Vangel* v. *Vangel*, 116 Cal.App.2d 615, 631 [254 P.2d 919]; *Estate of McConnell*, 6 Cal.2d 493, 497 [58 P.2d 639]; *Heck* v. *Heck*, 63 Cal.App.2d 470, 473 [147 P.2d 110].) Defendant Bow Herbert's affidavit states that there was an oral agreement between the parties that he should be paid a salary for his work as manager of the partnership business. He further points out that his assertion in this respect is not contradicted by plaintiffs, and claims that the existence of such an oral agreement is established. However, the court was not required, as a matter of law, to give full credence to his statements in that respect for a trial judge may reject the uncontradicted statement of a witness provided he does not act arbitrarily. (*Hicks* v. *Reis*, 21 Cal.2d 654, 659-660 [134 P.2d 788].) In evaluating such statements the trial court may take into account the interest of the witness in the outcome of the case and his motives and bias arising therefrom. (*Huth* v. *Katz*, 30 Cal.2d 605, 609 [184 P.2d 521]; *Kraut* v. *Cornell*, 175 Cal.App.2d 528, 532 [346 P.2d 438].) Obviously, Bow Herbert was deeply interested in the outcome of this

matter. Therefore, it cannot properly be said that his claim for salary was established at the preliminary proceeding in the court below.

The order is affirmed.

Ashburn, J., and Nourse, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.