[Civ. No. 21925. First Dist., Div. One. Dec. 21, 1964.]

A. L. CHRISTOPHER et al., Plaintiffs and Respondents, v. JOHN W. JONES et al., Defendants and Appellants.

Adams, Ball & Kraft and Eleanor M. Kraft for Defendants and Appellants.

Malovos, Mager & Chasuk and Chalmers Smith for Plaintiffs and Respondents.

BRAY, J.,*—Defendants appeal from an order granting a preliminary injunction enjoining them from permitting chlorine gas or fumes to enter on plaintiffs' property.[1]

## QUESTIONS PRESENTED

1. Did the court abuse its discretion? No.

2. Does section 731a, Code of Civil Procedure, prevent the granting of injunctive relief? No.

3. Does the order unnecessarily restrict defendant's activities? YES.

## RECORD

Plaintiffs own certain real property situated within the City of Milpitas, County of Santa Clara, State of California, upon which is situated an orchard, composed primarily of prune trees, but also including some walnut and apricot trees. Defendant owns real property immediately adjacent to the orchards. Defendant's land is specifically zoned and approved for its operations, *viz.*, a repackaging plant the purpose of which is to take chemicals of various kinds from a large container and put them in smaller containers for distribution to consumers, principally for use in water purification and sewage treatment.

Alleging that chlorine gas and fumes originating from defendant's plant was injuring their trees plaintiffs filed suit for injunctive relief. Defendant opposed the issuance of the injunction contending that plaintiffs had not shown irreparable damage or a continuing threat and that section 731a, Code of Civil Procedure, was an absolute defense to the relief sought. After hearing, the trial court issued a preliminary injunction, which enjoined defendant, during the pendency of the action ''from permitting the entrance upon the land of Plaintiffs, . . . of chlorine gas and/or fumes [*sic*] originating

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Such an order is appealable. (Code Civ. Proc., § 963, subd. 2; *McCarty* v. *Macy & Co.* (1957) 153 Cal.App.2d 837, 840 [315 P.2d 383].)

The complaint was brought against defendants John W. Jones, Jones Chemicals, Inc. and a number of Does. However, the injunction applies only to defendant Jones Chemicals, Inc. The record does not show the disposition of the case as to defendant John W. Jones. For that reason we will refer only to defendant Jones Chemicals, Inc.

on and from the premises of Defendant, Jones Chemicals, Inc.''

### Effect of Section 731a, Code of Civil Procedure

Code of Civil Procedure, section 731a, provides: ''Whenever any city, city and county, or county shall have established zones or districts under authority of law wherein certain manufacturing or commercial or airport uses are expressly permitted, except in an action to abate a public nuisance brought in the name of the people of the State of California, no person or persons, firm or corporation shall be enjoined or restrained by the injunctive process from the reasonable and necessary operation in any such industrial or commercial zone or airport of any use expressly permitted therein, nor shall such use be deemed a nuisance *without evidence of the employment of unnecessary and injurious methods of operation.* Nothing in this act shall be deemed to apply to the regulation and working hours of canneries, fertilizing plants, refineries and other similar establishments whose operation produce offensive odors.'' (Italics added.) (As amended Stats. 1959, ch. 795, p. 2808, § 2.)

Section 731a denies injunctive relief to private persons whenever a commercial enterprise operates within a legally defined area under an express permit as long as the enterprise does not employ unnecessary and injurious methods of operation. (See *Gelfand* v. *O'Haver* (1948) 33 Cal.2d 218, 220 [200 P.2d 790].) The issue on this appeal is whether plaintiff proved that defendant operated its plant in an unnecessary and injurious manner.

There does not seem to be any dispute that defendant was operating within the purview of the proper zoning ordinances. Applicable here is the following from *Gelfand* v. *O'Haver, supra,* 33 Cal.2d 218: '' [T]he manifest purport of the adoption of section 731a was to eliminate injunctive relief where the business is operated in its appropriate zone and the only showing is an injury and nuisance to the plaintiff in such operation. He must now show more, namely, that the defendant employed 'unnecessary and injurious methods' in the operation of the business. (See, *North Side Property Owners Assn.* v. *Hillside etc. Park,* 70 Cal.App.2d 609 [161 P.2d 618].) But that does not mean that the only evidence that will establish an unnecessary and injurious method of operation is a failure to pursue the methods customarily and usually employed in other similar businesses in

the vicinity. While such evidence may be relevant to that issue, we see no reason why it should be indispensable.'' (P. 220.)

As hereinafter appears, the evidence shows that a well maintained plant is not supposed to leak chlorine gas to the adjacent land, and that for at least two months gas fumes were detectable on plaintiffs' property, and that even after the trial commenced chlorine gas was leaking on defendant's property. While there is evidence to the contrary, this court is bound by the trial court's findings. Thus, the determination that defendant was operating its plant in an unnecessary and injurious manner is supported.

### No Abuse of Discretion

There can be no question but that plaintiffs' orchard has been damaged by the escape of chlorine gas from defendant's property, for which damage defendant would be liable in damages. But the question confronting us is whether the evidence supports the implied finding of the trial court that the escape of chlorine gas from defendant's property was such that the court did not abuse its discretion in determining that defendant, unless enjoined, would continue to operate its plant in such a manner as to permit chlorine gas to escape to plaintiffs' land and to damage it.

As stated in *Wind* v. *Herbert* (1960) 186 Cal.App.2d 276, 283 [8 Cal.Rptr. 817] : ''At the outset, it should be noted that 'The general purpose of a preliminary injunction is to preserve the status quo until the merits of the action can be determined.' (*Harbor Chevrolet* v. *Machinists Local Union 1484*, 173 Cal.App.2d 380, 384 [343 P.2d 640].) 'Whether a preliminary injunction shall be granted rests largely in the discretion of the trial court and will not be reversed on appeal unless there is a manifest abuse of discretion.' [Citations.]''

The rule on appeal is well known, namely that this court must consider the evidence in the light most favorable to the prevailing party, the plaintiffs, giving them the benefit of every reasonable inference, and resolving conflicts in favor of the trial court's action. (See 3 Witkin, Cal. Procedure (1954) p. 2245.)

A summary of the evidence follows: Plaintiffs produced three witnesses, Ervin DeSmet, one of the plaintiffs and coowner of the orchard; Howard A. James, statistician for the Bay Area Air Pollution Control District and Robert E. White, a chemist employed by Stoner Laboratories.

Ervin DeSmet testified that in March of 1963, the leaves on the trees were "coming out into full leaf and they were green and healthy," but that in late May he and his foreman noticed that the leaves in "the area closest to Jones Chemical plant" began "to turn brown and the younger trees the leaves defoliated entirely and on the older trees the leaves began to drop to the ground." He further stated that he had smelled chlorine gas about half a dozen times when he was in the orchard, the first time being approximately at the beginning of June. Finally, he testified that any damage was confined to the southwest corner of the orchard in the area on the western boundary close to the Jones Chemical Plant.

Howard A. James, statistician for the Bay Area Air Pollution Control District, stated that he had visited the orchard on three occasions. On July 8, 1963, he examined trees in the southwest corner of the orchard. He discovered damage to the leaves of the trees in that area, usually associated with "gases of nature, sulfur dioxide and chlorine," but did not smell any gas in the air. He next visited the orchard on July 29, 1963, and examined an area recently acutely damaged, the damage being of the type attributable to one massive distribution of contaminants. At that time in the middle of the damaged area he "identified a strong chlorine odor downwind from Jones Chemical Company." On the same occasion he and one Mr. Gamma of the Enforcement Department took pictures of the orchard area and of specific trees in the orchard. Mr. James' third visit occurred on or about September 10, 1963, but he did not look at any trees or walk through the orchard on that date.

Robert White, a chemist, testified regarding his visits to the orchard on July 12 and 29. On July 12, 1963, he sampled leaves of the trees in various areas of the orchard. He removed leaves from the trees and took them to the laboratories for examination and analysis for chloride content. The results of the testing were stated in terms of "milligrams of chloride per gram of leaf dry weight basis." Mr. White's testimony is best summarized by his reports based on his experiments. These reports were letters to Mr. DeSmet, one of the property owners and plaintiffs in this action. They were entered in evidence as plaintiffs' exhibits 12 and 13. These reports and his testimony show the different chloride contents of the leaves in the orchard. It also shows that the chloride content in the leaves was far higher on the western edge of the orchard, nearest to the defendant's chemical plant, than in the rest of

the orchard. It appears that the chloride content of the orchard leaves varied directly with their proximity to the defendant's chemical plant.

On the second trip to the orchard Mr. White again took samples from different trees. However, this time he specifically noted the existence of recent damages to certain trees.

The testimony of defendant's witnesses follows: Richard B. DeLong, City Manager of Milpitas, testified that defendant's plant was built under permit from the city on property zoned for heavy industrial use.

Dr. Max L. Spealman, a chemical engineer testified as an expert concerning his observations of the operation of the Jones' plant on two occasions, September 25 and 27, that the plant was ''well designed and well constructed'' and ''specifically designed to prevent the escape of chlorine gas to the atmosphere.'' He noted that even a small leak of chlorine would be detected immediately by the odor of the chlorine so that only a small amount would escape into the air. He said that if the plant was properly maintained and operated there should be no chlorine on the adjacent property; that ''barring such things as human or unexpected failure of equipment on which a man is entitled to rely, I see no reason why there should be any chlorine get into the adjoining property.''

Theodore O. Tuft, a consultant in agriculture pertaining to crop loss due to chemicals, testified concerning his observations of the orchard on September 26, 1963, from both the air and the ground and submitted photographs taken from both vantage points. He noted that the orchard suffered from lack of care, mechanical injury to the trees, and damage not associated with chlorine gas called ''scorch.'' He saw no indications of recent damage to the orchard caused by air effluents, i.e., ''something escaping in the air as being foreign to that particular environment,'' such as chlorine gas, smog, or sulphurdioxide. He concluded, based on his observations of the leaves that ''it would be as much as six weeks since the last exposure.'' Finally, he stated that based on his observations and the nature of the compound which caused the damage he did not believe ''there will be extensive permanent damage,'' but that the damage could not be evaluated fully and accurately until the spring. He noted that the portion of the orchard in the worst condition, the southwest corner, was not getting enough water and that in his opinion the condition of the orchard as a whole indicated it is a marginal orchard.

Admittedly on or about July 26, 1963, a cylinder con-

taining liquid chlorine ruptured as a result of a defect in the construction of the cylinder rather than anything in the operation of defendant's plant. The explosion released a considerable amount of chlorine gas into the air which carried over into plaintiffs' orchard. The single instance about July 26 of a liquid chlorine cylinder erupting and which did considerable damage to plaintiffs' property would not justify a finding of a continuing threat to plaintiffs' property. (Defendant has nothing to do with the making of these cylinders.) Although defendant might be liable in damages because of that incident, it would not constitute the basis for an injunction.

■ Defendant contended that the injunction was improper because it was issued to enjoin a completed act and plaintiffs' remedy at law was adequate. This contention is meritless. The evidence clearly indicates that the gas was present in the plaintiffs' orchard off and on for at least a two-months' period prior to the issuance of the injunction. Defendant produced no testimony to refute plaintiffs' evidence to the effect that chlorine gas did reach plaintiffs' property, other than the opinion of defendant's expert Tuft who visited the property on September 26, to the effect that the damage to the trees which was there was not associated with chlorine gas. Obviously the court did not accept his opinion as opposed to plaintiffs' experts who found chlorine gas damage, particularly as it was conceded that considerable chlorine gas reached plaintiffs' property as a result of the cylinder rupture which had taken place prior to Tuft's visit. The court, in effect, found that the testimony of plaintiff DeSmet and plaintiffs' experts to the escape of gas to plaintiffs' property was true. Defendant made no effort to explain how this could have happened if their plant was properly operated. Moreover, Dr. Spealman, also defendant's witness testified that on September 27 when he visited defendant's plant, ''I smelled a small amount of chlorine in the immediate filling station area, just a little bit, in low concentration,'' and on September 25 when a tank car was being connected, there was a leak because one of the connections was not tight. While there was no evidence that the chlorine gas on these occasions reached the adjoining property of plaintiffs, they, together with the instances when chlorine gas did reach plaintiffs' property, justify an inference that defendant unless restrained will continue to permit the escape of gas to plaintiffs' property.

Without merit is the contention that the plaintiffs' remedy at law is adequate and therefore no equitable relief should

issue. It is elementary that injunctive relief will issue only after a clear showing of irreparable injury for which there is no other adequate remedy. However the right to injunctive relief exists in some cases irrespective of damage and regardless of whether or not the injury is shown to be irreparable. "Such is the case where it is sought to restrain a party from wrongfully taking away a part of real property; from continuing acts that might give rise to a prescriptive right or easement against the plaintiff, that would destroy vegetation—such as fruit and ornamental trees and shrubbery —that may be of peculiar value to the owner, that would destroy the substance of land that could not be replaced, that would destroy the plaintiff's growing crops and render his land valueless, or that might in the future hamper the use of or lessen the value of the land; . . . ." (See 27 Cal. Jur.2d, Injunctions, § 40, pp. 155-156.)

 Applicable to defendant's contention that no "irreparable damage" is shown in this case is the following quotation from *Wind* v. *Herbert, supra,* 186 Cal.App.2d 276: "In *Commonwealth* v. *Pittsburgh & Connelesville R.R. Co.,* 24 Pa. 159, the court said, at page 160 [62 Am. Dec. 372]: 'The argument that there is no "irreparable damage," would not be so often used by wrongdoers if they would take the trouble to observe that the word "irreparable" is a very unhappily chosen one, used in expressing the rule that an injunction may issue to prevent wrongs of a repeated and continuing character, . . . ' " (P. 285.)

### The Order is too Restrictive

Plaintiffs concede defendant's contention that the order is too restrictive and have stipulated that there may be added at the end of the second paragraph of the order the words, "which cause injury to plaintiffs' real property."

 As the preliminary injunction only serves until the merits of the action can be determined, defendant will have an opportunity at the trial to show that there will be no continuing injury to plaintiffs' property and that its methods of operation are both necessary and noninjurious.

The order appealed from is amended by adding at the end of the second paragraph the words "which cause injury to plaintiffs' real property." In all other respects the order is affirmed.

Plaintiffs will recover costs.

Sullivan, P. J., and Molinari, J., concurred.