[Civ. No. 24365. Fourth Dist., Div. One. Feb. 18, 1983.]

CALVIN CAGNOLATTI et al., Plaintiffs and Respondents, v.
EDGAR L. GUINN, Defendant and Appellant.

COUNSEL

Jennings, Engstrand & Henrickson and David P. Curnow for Defendant and Appellant.

Joseph Fox and Malvina E. J. Abbott for Plaintiffs and Respondents.

OPINION

**COLOGNE, Acting P. J.**—Edgar L. Guinn, M.D., appeals a judgment in which the superior court, sitting without a jury, found him jointly and severally

liable with codefendants Henry H. Hill (H. Hill), Katherine Hill (K. Hill) and Malvin J. Williams, M.D., for damages of $40,225.45.

The Timely Investment Club (TIC), a general partnership, was formed in 1962 by Guinn, the Hills and 15 other charter members for the purpose of educating the partners in investment principles and investment of their money on a regular basis. TIC was governed by a partnership agreement which was twice modified. From TIC's inception, Guinn was the president, H. Hill was the vice-president and treasurer and K. Hill was the secretary.

TIC grew from 18 partners in 1962 to 100 partners in 1968, to over 300 partners by 1976. Partners were required to make monthly contributions to the club which increased their individual units of ownership in the partnership. A partner could resign by giving written notification or by failing to make three monthly contributions, and could seek cash redemption[1] of his units.

TIC's early investments were mostly in securities, but the portfolio consisted primarily of real estate since 1968. The increase in the number of partners created a problem for TIC because the transfer of some partnership assets required the signature of all partners. In April 1968, the Guinn-Hill Corporation (GHC) was incorporated with Guinn as president, H. Hill as vice-president and K. Hill as secretary. These individuals along with Williams served on GHC's board of directors. Some time after July 12, 1976, Williams served as vice-president of GHC. After unanimous approval by TIC's partners, GHC became the corporate trustee for TIC pursuant to an August 8, 1968, trust agreement which was signed by Guinn, H. Hill and K. Hill. On November 6, 1968, all of TIC's assets were transferred to GHC as trustee. The trust agreement conferred to GHC broad powers and authority over the trust assets although the individual partners continued to discuss investment decisions at the partnership meetings until 1974. These discussions indicate the partners did not intend to relinquish their management and control of TIC's affairs by their approval of the trust agreement.

In the early 1970's, the partnership experienced financial problems, particularly with liquidity. In 1974, GHC began making all investment decisions without consulting the partners at TIC's meetings as was authorized by the trust agreement. At various times between January 1975 and April 1976, the eight plaintiffs resigned from TIC pursuant to the partnership agreement.[2] Under the partnership agreement, TIC was obligated to redeem units of ownership from

---

[1] In its findings and conclusions, the court used the terms "liquidation" and "redemption" synonymously.

[2] All of the plaintiffs effected the resignation by notification of that fact, except Jonette and Erskin Moore; their resignation was effected by failing to make the monthly purchase of units as required by the partnership agreement.

the funds available and the plaintiffs sought cash redemption. Although some partners were cashed out and defendants were able to liquidate their interests in exchange for certain partnership personal property, the available liquid assets were primarily used to pay creditors and were insufficient to redeem the plaintiff-partners' interests. The total liquidation value of the plaintiffs' interests at the time of their resignation was $42,414.32.

In this lawsuit, plaintiffs contend that the defendants had a duty to sell partnership assets and pay the plaintiffs the amount of their claim, the defendants instead diverted partnership assets to their own use and failed to pay plaintiffs' demand. The wrongful acts of the defendants are alleged to have occurred *after* their resignations and defeated their claim for payment as a creditor.

During the early years of the partnership, H. Hill had been a salaried employee of TIC. In 1974 or 1975, H. Hill became the salaried manager of GHC and K. Hill was the paid secretary. In July 1976, H. Hill resigned as an officer and director of GHC, and GHC's board of directors (Guinn, K. Hill and Williams) approved a contract which hired H. Hill as a consultant at an annual fee of $17,000, a commission or fee on the sale or lease of partnership realty, expenses of $200 per month and mileage at 20 cents per mile.[3] Under the consulting contract, H. Hill was to perform essentially the same duties he performed as a GHC employee. The court found H. Hill had been paid $32,268.20 from trust assets under this contract from September 5, 1976 to August 8, 1977, and also found these payments were a violation of H. Hill's fiduciary duties as a partner and a violation of the fiduciary duties of Guinn, K. Hill and Williams as officers and directors of GHC as trustee, who authorized the contract and payments.

In July 1976, GHC's directors (Guinn, H. Hill, K. Hill and Williams) authorized payment to Guinn and H. Hill of commissions or fees for the sale of partnership properties. At this time, Guinn was not an employee of either TIC or GHC. These commissions paid to Guinn ($3,750) and H. Hill as discussed above ($8,047.50) were to compensate them for their time and efforts spent on the sales transactions. No real estate broker was commissioned for these sales and neither Guinn nor H. Hill were licensed brokers. TIC's partners did not approve these fees. The court concluded the receipt of these funds and the approval violated defendants' fiduciary duties and these funds should have been used to redeem plaintiffs' units.

In April 1976, H. Hill arranged the assignment of TIC's note and trust deed from St. Stephen's Church. Guinn, as president of TIC, authorized the payment of $345 to H. Hill as a fee for the assignment. On this same transaction, K. Hill

---

[3]GHC paid these amounts to H. Hill directly or to his company, H & H Enterprises.

received a $50 document preparation fee for typing, which had been approved by Guinn. At this time, she was the paid secretary of GHC. The court concluded these payments violated defendants' fiduciary duties and these funds should have been used to redeem plaintiffs' units.

From May to June 1976, GHC paid H & H Enterprises $288.60 for mileage on behalf of H. Hill. At this time, H. Hill was employed by GHC and this expenditure was approved by GHC's directors. The court concluded these payments constituted self-dealing and were a violation of the fiduciary duties of Guinn, H. Hill, K. Hill and others.

Because lending institutions would not loan GHC the necessary funds to prevent the foreclosure on a shopping center owned by TIC, in July 1976, directors Guinn, H. Hill, K. Hill and Williams authorized GHC to borrow $33,077.31 from H & H Enterprises at 10 percent interest plus 10 points. This loan was arranged on extremely short notice. The court found the interest and points to be self-dealing and a violation of the directors' fiduciary duties.

In February 1977, Guinn paid from his personal funds a judgment of $1,033.33 against TIC to prevent the judgment creditor from executing on the judgment. TIC repaid Guinn the amount plus 10 percent interest. Guinn received $12.92 more than the amount of interest the judgment carried. The court concluded Guinn received more than TIC would have paid on the judgment and the $12.92 must be refunded to plaintiffs for redemption of their units.

Guinn contends the court erred concerning the various transactions because the receipt of the money was not self-dealing; or, if it was self-dealing, the money received was reasonable compensation for work performed on behalf of the trust estate.

Before discussing the specific transactions, it is important to identify the basis of liability. The court found and concluded that once the plaintiff-partners resigned from TIC, the partnership had a duty to redeem the plaintiffs' units for cash as funds became available to do so; under the trust agreement, the defendant GHC, as trustee, and the defendants Guinn, H. Hill, K. Hill and Williams as the officers and directors of GHC assumed this duty and were obligated to liquidate enough of the partnership assets to discharge the claim of the plaintiffs; and the officers of GHC failed to discharge the claim of the plaintiffs as cash was available or could be made available, but instead used the available partnership funds for their own personal advantage. To that extent, the defendant-officers were found indebted to the plaintiffs. Their failure to pay this debt was a direct result of their self-dealing and provided the basis for the court's imposition of joint and several liability on Guinn and his codefendants for those transactions in which they all participated or approved.

While normally the withdrawal or expulsion of a partner effects a dissolution of the partnership, where the agreement expressly provides otherwise the partnership continues and an accounting, winding up and dissolution is not required (Corp. Code, § 15031, subd. (b)). Here, the partnership agreement specifically provided the withdrawal of a partner under conditions presented would not effect a dissolution, but such partner would be paid the value of his equity by the trustees from available cash. Under these conditions, the plaintiffs stand in the position of a beneficiary under the trust because the trustee is obligated to pay them.[4]

There is no dispute on appeal that Guinn and codefendants hold a fiduciary relationship to the partners in TIC. Corporations Code sections 15018 and 15021 delineate the general fiduciary obligations a partner has toward the copartners. ■ "[T]he relationship between partners is of a fiduciary character which imposes upon the parties the duty of good faith and fair dealing and requires that none of the partners may be permitted to take any unfair advantage." (*Wind* v. *Herbert* (1960) 186 Cal.App.2d 276, 284 [8 Cal.Rptr. 817].) " 'Partners are trustees for each other, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind [citation]. A partner has no right to deal with partnership property other than for the sole benefit of the partnership [citation].' " (*Prince* v. *Harting* (1960) 177 Cal.App.2d 720, 727 [2 Cal.Rptr. 545], citing *Llewelyn* v. *Levi* (1909) 157 Cal. 31, 37 [106 P. 219].)

■ Guinn and codefendants also assume a fiduciary duty as directors of GHC, the corporation they serve. This concept is particularly important when, as in this case, the directors govern a corporate trustee.

Civil Code[5] Section 2228 states: "In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind."

Section 2229 states: "A trustee may not use or deal with the trust property for his own profit, or for any other purpose unconnected with the trust, in any manner." ■ The law does not permit a fiduciary to deal with himself in any transaction in his individual capacity (*Estate of Boggs* (1942) 19 Cal.2d 324, 333 [121 P.2d 678]).

---

[4]Creditors make no claim of priority nor do the other nonresigning partners.

[5]All statutory references are to the Civil Code unless otherwise specified.

"A trustee who uses or disposes of the trust property, contrary to Section 2229, may, at the option of the beneficiary, be required to account for all profits so made, or to pay the value of its use, and, if he has disposed thereof, to replace it, with its fruits, or to account for its proceeds, with interest." (§ 2237.)

Neither a trustee *nor any of his agents* may take part in any transactions concerning the trust except when a fully informed beneficiary who is free from the trustee's influence authorizes the transaction (§ 2230).

"[A] trustee cannot purchase or deal with the subject of the trust nor place himself in an attitude antagonistic to the trust. It is against public policy to permit persons occupying fiduciary relations to be placed in such a position that the influence of selfish motives may be a temptation so great as to overpower their duty and lead to a betrayal of their trust. This rule is unyielding . . . . Courts will not permit an investigation into the fairness or unfairness of such a transaction or allow the trustee to show that the dealing was for the best interest of the beneficiaries. It is a trustee's duty in all things to first consider and always to act for the best interests of the trust. [Citation.]" (*Toedter* v. *Bradshaw* (1958) 164 Cal.App.2d 200, 208 [330 P.2d 688]; see also *Estate of McLellan* (1936) 8 Cal.2d 49, 54 [63 P.2d 1120].)

In addition, section 2239 provides: "A trustee is responsible for the wrongful acts of a co-trustee to which he consented, or which, by his negligence, he enabled the latter to commit, but for no others." ■ Where a breach of fiduciary duties results in liability to more than one cotrustee, the liability is joint and several (*Gbur* v. *Cohen* (1979) 93 Cal.App.3d 296, 300 [155 Cal. Rptr. 507]). ■ "[W]here a fiduciary, in breach of his duty of disclosure, causes secret profits to flow to a third party, the fiduciary may be held liable for those profits even though he did not personally receive any part of them. [Citation.]" (*St. James Armenian Church of Los Angeles* v. *Kurkjian* (1975) 47 Cal.App.3d 547, 553 [121 Cal.Rptr. 214].)

■ The facts here strongly support the conclusion of law these transactions constituted self-dealing or a breach of similar fiduciary duties. The partnership agreement specified how partners could obtain cash redemption of their units. The court found, and we agree, that after a partner properly requests TIC to redeem his units, TIC's officers and GHC (as trustee) have a duty to execute the redemption to the extent funds are or can reasonably be made available. Failure to redeem units with available funds would be a breach of duty. Furthermore, if cash is being diverted to pay the trustee, or the controlling officers of the trustee in their personal transactions with the trust, self-dealing occurs unless the beneficiaries specifically authorize or ratify the payments. The trustees could not, in that instance, at least to the extent of the cash so diverted, claim there were insufficient funds to meet the obligation. Plaintiffs were entitled to im-

mediate payment and this cash should have been paid to them as beneficiaries under the partnership and trust agreements.

In the present case, GHC initially made the trust management decisions in consultation with the individual partners who attended TIC's regularly scheduled meetings. When the investments began to sour, GHC invoked a trust provision which authorized it to make the decisions *without* consulting the individual partners. This change of policy may have had its roots in the convenience of effecting the business of the partnership, but it opened the door to greater opportunity for self-dealing and concealment which we view with some suspicion. Without ratification of their acts, the fiduciaries either received or approved the receipt of otherwise available funds for themselves, thus preventing plaintiffs' cash redemption of their units. The trust agreement only authorized GHC to make investment decisions without consulting the individual partners. It did not authorize the fiduciaries to gain a personal, unfair advantage over the beneficiaries.

We hold the facts adequately support the court's conclusion of law that the fiduciaries who diverted trust funds for their personal benefit were guilty of self-dealing. The court also committed no error in concluding those fiduciaries, such as Guinn, who wrongfully authorized the self-dealing of the other trust officers, were equally culpable under the rationale of joint and several liability.

Guinn next contends these transactions, if found to be self-dealing, were justified as reasonable compensation.

The rule is "[a]bsent an express agreement, a partner is not entitled to any compensation for his services to the partnership other than his share of the profits" (*Wind* v. *Herbert, supra,* 186 Cal.App.2d 276, 286). A trustee is entitled to compensation according to the trust provisions on compensation (§ 2274). ■ If the trust agreement is silent on compensation, the amount of compensation for a trustee's services rests in the sound discretion of the court, and the court may consider the trustees' management of the trust property in determining the compensation accordingly (*Estate of McLellan, supra,* 8 Cal.2d 49, 55). A trustee is entitled to the repayment from trust property of all actual expenses he incurred if the expenses were properly incurred or they produced an actual benefit to the trust estate (§ 2273).

■ In the present case, the partnership agreement was silent as to compensation of partners, but the trust agreement authorized GHC, as trustee, to appoint officers or agents and fix their compensation. The trust agreement specified, however, GHC could be compensated in a specific amount based on property value and extraordinary services, with an "annual minimum fee" not to exceed 5 percent of the trust's gross income.

GHC, as trustee, was therefore entitled to compensation only in the amount authorized by the trust agreement (§ 2274). While the trust agreement authorized payment of extraordinary services, the court below did not find, and we cannot find, extraordinary services which might warrant additional compensation. The evidence is noticeably absent that the payment of interest and points on the Euclid and Division loan was necessary to prevent foreclosure, and the court apparently so found. The evidence only supported the fact foreclosure was imminent, but there was no evidence a bank or savings and loan was unable to provide the funding and self-dealing was required. The self-dealing here, it should also be noted, was not done with any sort of notice to the other partners. It presents a classic example of a partner trying to make a secret profit for himself alone from the business of the partnership.

The trust agreement contemplated management service by GHC and the services of a consultant for that purpose are the kind of ordinary services that the trust agreement could expect from GHC. Further, H. Hill, K. Hill, Guinn, or any other individual, are not entitled to payment for their services from trust assets. Their services were for GHC and their salary and expenses are, at best, obligations of GHC which should be paid by the corporation out of the commissions due under the agreement.

Guinn finally contends plaintiffs are not entitled to the full recovery of the judgment because the partners who did not resign from TIC would be unprotected. This issue was not raised below and considered by the trial court, and it is therefore improper to assert this contention now.

Judgment affirmed.[6]

Staniforth, J., and Wiener, J., concurred.

---

[6]Our holding resolves in respondents' favor the issue of reasonableness of the compensation items including H. Hill's consulting fee of $17,000, property transaction commissions of $8,047.50, and trust deed assignment fee of $345, K. Hill's typing fee of $50, and Guinn's property transaction commissions of $3,750.

Also we note plaintiffs did not seek recovery of K. Hill's or H. Hill's salary payments made by GHC. We construe this as either a waiver of plaintiffs' rights to these payments, or as proper payments pursuant to a generous interpretation of the trust provisions.